FILED
JAMES BONINI
CLERK

06 AUG 31 PM 12:55

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------ x
:
:
KING LINCOLN BRONZEVILLE NEIGHBORHOOD :
ASSOCIATION, THE OHIO VOTER RIGHTS ALLIANCE :  Civil Action No. C2 06 745
FOR DEMOCRACY, THE LEAGUE OF YOUNG :
VOTERS/COLUMBUS, WILLIS BROWN, PAUL :
GREGORY, MILES CURTISS, MATTHEW SEGAL, and :  JUDGE MARBLEY
HARVEY WASSERMAN, individually and as :
representatives of a class of persons similarly :  MAGISTRATE JUDGE KEMP
situated, :
:
      Plaintiffs, :  **COMPLAINT**
:
      v. :
:
J. KENNETH BLACKWELL, in his official capacity as :
the Secretary of State of the State of Ohio, and :
JOHN DOES Nos. 1-100 in their individual and :
official capacities, :
:
      Defendants. :
:
------------------------------------ x

King Lincoln Bronzeville Neighborhood Association et al v. J. Kenneth Blackwell et al     Doc. 1

**PRELIMINARY STATEMENT**

    1.    This is a civil rights action in which named plaintiffs Willis Brown, Paul Gregory, Miles Curtiss, Matthew Segal, and Harvey Wasserman, on behalf of themselves and a class of similarly situated individuals, and King Lincoln Bronzeville Neighborhood Association, the Ohio Voter Rights Alliance for Democracy, and the League of Young Voters/Columbus, seek prospective relief for Defendants' violation of their rights, privileges, and immunities

Dockets.Justia.com

secured by the Civil Rights Act of 1871, 42 U.S.C.§§ 1983 and 1985, the First, Thirteenth, Fourteenth and Fifteenth Amendments to the United States Constitution, arising out of the past and ongoing conduct of Ohio's Secretary of State J. Kenneth Blackwell in connection with past elections in Ohio.

2. Specifically, Defendant Blackwell and those acting in concert with him, at all times under the color of law, have conspired to deprive and continue to deprive Ohioans of their right to vote and have, in fact, deprived and continue to deprive Ohioans of their right to vote by, in a selective and discriminatory manner, unfairly allocate election resources (such as voting machines), institute a system of provisional ballots, purge voter registrations, and broke the bi-partisan chain of custody of ballots.

3. These and other wrongful acts were undertaken by, but not limited to, Public Election Officials and Private Contractors hired by Ohio to assist in the election.

4. The actions and inactions described above, and in greater detail below, had the intended effect of depriving the plaintiffs of their voting rights, including the right to have their votes successfully cast without dilution and cancellation or reversal by vote machine or ballot tampering.

**JURISDICTION**

5. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4), 2201 and 2202, and 42 U.S.C. §§ 1983 and 1985, and because this action seeks redress for the violation of plaintiffs' constitutional and civil rights.

6. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

## VENUE

7. Venue is proper in the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## THE PARTIES

8. Defendant J. Kenneth Blackwell is the Secretary of State for the State of Ohio. Defendant Blackwell is sued in his individual and official capacity as the Secretary of State of Ohio, at all times acting under the color of law. Under the color of State law, Defendant Blackwell conspired to commit and in fact did, in a selective and discriminatory manner, under allocate voting resources, purge voter registrations, and implement a provisional ballot system during the 2004 presidential election, depriving and continuing to deprive Ohioans of their Constitutional right to vote, and denying them equal protection of their right to vote. Based upon prior elections, Plaintiffs and Organizational Plaintiffs are extremely concerned that these ongoing rights violations will continue to future elections.

9. John Does 1-100 are Public Election Officials and Private Contractors ("Election Officials") who provided services to Ohio, whose identity is presently unknown to plaintiffs who conspired to commit and in fact did, in a selective and discriminatory manner, purge voter registrations, insufficiently allocate voting resources, administered a system of provisional ballots, and broke the bi-partisan chain of custody of ballots, during the 2004 presidential election and in prior elections. Based upon prior elections, Plaintiffs and Organizational Plaintiffs are extremely concerned that these ongoing rights violations will continue to future elections. They are sued both in their individual and official capacities.

## ORGANIZATIONAL PLAINTIFFS

10. The Organizational Plaintiffs, set forth and described below, all share the following characteristics in common: their members have a reasonable fear that there is a likelihood of repetition of the practices, activities and conspiracy alleged herein and that resulted in the unnecessary delays in voting and voting in their communities, delays and other obstacles in their voting that in the upcoming election later this year, November, 2006; this reasonable fear is based on the perception, founded on facts set forth below, herein, that the aforementioned delays and obstacles were created by the intentional actions of the Defendants, as a result of Defendant Blackwell's policies, to wit, that the members of the Organizational Plaintiffs and others in the same communities will be prevented from voting in numbers as large as they otherwise would, due to the obstacles set forth below; and that these policies are based upon invidious racial animus and invidious animus to other characteristics, such as youth and student status. Further, as a result of the wrongful actions of the Defendants as herein alleged, the organizations, associations and groups identified as plaintiffs herein, and their members, have been required to engage in substantial organizational effort and the expenditure of substantial organizational resources to address and attempt to partly correct the harm that has resulted.

11. KING LINCOLN BRONZEVILLE NEIGHBORHOOD ASSOCIATION is a non-profit organization incorporated in the State of Ohio, and its membership includes many of the four thousand, primarily African American, residents of this Columbus, Ohio neighborhood. The residents of this area vote at the Broad Street Presbyterian Church in Columbus, Ohio. The voters at this location are 85% African American. In the November 2004 general election, as a result of the wrongful acts of the Defendants, as set forth herein, below,

4

many of its members experienced wait times in excess of three hours to vote and, as an intended consequence, many were discouraged from voting and/or unable to vote and ultimately did not vote.

12. THE OHIO VOTER RIGHTS ALLIANCE FOR DEMOCRACY is non-profit organization incorporated in the State of Ohio. Its members are primarily African-American voters in Columbus, Ohio who were targeted by the policies of the Defendants which resulted in voter suppression in the African American community and other communities, and other irregularities in the 2004 general election, set forth below.

13. THE LEAGUE OF YOUNG VOTERS/COLUMBUS is the Columbus chapter of the League of Young Voters, a non profit corporation. Its members played a leadership role in the convening of public hearings after the November 2004 election in which its members and other young people, particularly college students, the targets of voter suppression efforts caused by consistent mechanical failures of machines at precincts in which they and large numbers of students and young voters voted.

**INDIVIDUAL PLAINTIFFS**

14. All of the aforementioned individual plaintiffs experienced the barriers and impediments to voting described throughout this complaint. These barriers and impediments include delays in voting, inability to readily obtain absentee ballots, mechanical failures, failure to provide a fail safe paper trail in many instances and mistabulation of votes. They have created a reasonable fear and expectation in these plaintiffs that there is a likelihood of repetition in the forthcoming November election and subsequent elections and that they will therefore be unable to vote in forthcoming elections. For example, if confronted with the delays caused by

Defendants policies and practices, they may not be able to wait and, therefore vote as they did in November, due to family, health, personal and/or work pressures.

15. Willis Brown is an African American voter and a near Eastside resident of Columbus, Ohio and of the King Lincoln Bronzeville neighborhood. He is the President of the King Lincoln Bronzeville Neighborhood Association.

16. Paul Gregory is an African American resident of Columbus, Ohio who, like many in his precinct and at his voting location, experienced mechanical difficulties when he voted on an electronic voting machine in such a manner that he presently has a reasonable fear and concern that the vote he attempted to cast was not counted. personally does not know if the vote he tried to cast for John Kerry on an electronic voting machine in Franklin County. He is the President of the Ohio Voter Rights Alliance for Democracy, an organizational plaintiff herein.

17. Matthew Segel was a student at Kenyon College and voted in Gambier, Ohio at the time of the November 2004. He and others in his precinct and voting experienced the same impediments and barriers to voting set forth elsewhere herein.

18. Harvey Wasserman teaches history at the college level, is an active writer and journalist. As a voter in Bexley, Ohio in the November 2004 election he experienced great difficulty in casting his vote, specifically in obtaining an absentee ballot.

## VIOLATIONS OF CIVIL AND CONSTITUTIONAL RIGHTS

19. Voting machines were unevenly distributed, disenfranchising minority voters. Upon information and belief, Defendants selectively and discriminatorily designed and implemented procedures for the allocation of voting machines in a manner to create a shortage in

the number of machines for certain urban precincts wherein large numbers of African American voters resided.

20. Accurate precinct boundaries did not exist on Election Day, disenfranchising minority voters. Upon information and belief, Defendants selectively and discriminatorily designed and implemented a voter suppression strategy in Lucas County, wherein large numbers of African American voters reside, through, among other things, failure to timely set precinct boundaries.

21. Malfunctioning voting machines were kept in operation in minority precincts. Upon information and belief, Defendants selectively and discriminatorily designed and implemented a voter suppression strategy targeted at minority precincts in Lucas County through, among other things, placing in service faulty optical scan machines that did not accurately record presidential votes.

22. African-American voters were disproportionately assigned provisional ballots and those ballots were disqualified at higher rates than in nearby white-majority precincts. Upon information and belief, Defendants selectively and discriminatorily designed and implemented an interpretation of provisional balloting and voting precinct administration that resulted in the City of Cincinnati accounting for 95% of the rejected provisional ballots in Hamilton County, even though only one third of the voters reside in Cincinnati, thereby disparately impacting African American voters.

23. Provisional ballot rules were enforced in minority districts but not applied to voters in white-majority precincts. Defendants selectively and discriminatorily implemented a system of provisional ballots whereby, for example, in the rural, predominantly white, Miami County even a voter who resided in another county was allowed to vote, whereas in

7

predominantly minority Franklin County, where 356 voters asked for provisional ballots because of long lines and executed such paper ballots in the correct precinct, the ballots were rejected on the basis that provisional voters must vote by machine.

24. Voter purges targeted precincts with high concentration of minority voters. Upon information and belief, Defendants selectively and discriminatorily designed procedures to purge voters from the rolls in such a way as to disparately and unreasonably remove African American voters from the rolls, in particular in Cuyahoga County and Lucas County for example.

25. Provisional ballot rules were narrowed before Election Day to limit the locations where voters could cast these ballots so they would be counted, not rejected. Defendant Blackwell selectively and discriminatorily devised a system of provisional voting whereby African American voters were disparately impacted and not allowed to have their votes counted

26. Upon information and belief, Defendants selectively and discriminatorily designed and implemented a voter suppression strategy targeted at minority precincts in Lucas County through, among other things, placing in service faulty optical scan machines, resulting in the failure to count votes that were cast.

27. Defendant Blackwell selectively and discriminatorily devised a system of provisional voting whereby African American voters were disparately impacted and not allowed to have their votes counted.

28. Plaintiffs have been disenfranchised or otherwise severely burdened in their right to vote as a direct and proximate result of Defendant's actions and inactions.

29. Plaintiffs reasonably anticipate that, absent injunctive relief, they will be

disenfranchised or severely burdened in the exercise of their fundamental right to vote in the future.

30. Unless there are public findings and official acknowledgment of the manifest voter suppression and vote rigging in the 2004 presidential election, that experience and the continuing official indifference to it is likely to have a chilling effect upon those, such as the plaintiffs, who were targets of such tactics.

31. Absent candid recognition of the lack of integrity in the voting system that was utilized in the 2004 general election with respect to the most important race in that election, there is not likely to be corrective action proportionate to the ongoing threat that this presents.

32. If Ohio proceeds to administer its election system in 2006 and beyond, there is a reasonable basis to believe that this activity will continue.

33. Ohio has a history of violating the rights of its citizens. For years, Ohio has denied the meaningful and equal exercise of the right to vote by using non-uniform standards, processes, and rules, and that employs untrained or improperly trained personnel, and that has wholly inadequate systems, procedures, and funding necessary to ensure the meaningful and equal exercise of the right to vote.

34. Over the years, these violations have been well-documented. A 1973 General Accounting Office report concluded that in November 1971 the election process in Hamilton County "broke down completely", and that in May 1972 "thousands of electors were disenfranchised" because insufficient numbers of voting machines were delivered to precincts, machines were mis-programmed, and there were not enough trained personnel. These breakdowns have been repeated in these and other Ohio counties in the 1990s and during the

2000 election.

35. Specifically, Lucas County during the 2004 election was under special "administrative oversight" as a result of prior incompetent administration of elections. Despite this oversight, Defendant Blackwell conducted an investigation of Lucas County's performance in the 2004 election, and found thirteen areas of "grave concern," including the processing of thousands of voter registration forms through a haphazard and incompetently supervises system before the November 2004 election.

36. There is an actual and justiciable controversy as to which the plaintiffs require a declaration of their rights.

37. Unless the requested injunctive relief issues, the constitutional and statutory rights of plaintiffs and other eligible voters will continue to be infringed.

38. Plaintiffs have no adequate remedy at law for Defendants' violations of their rights.

39. The violations discussed have irreparably harmed Ohioans and, if not enjoined, will continue to irreparably harm Ohioans.

**FIRST CLAIM: (Violation of Equal Protection, Fourteenth and Fifteenth Amendments to the United States Constitution and 42 U.S.C. § 1983)**

40. Plaintiffs hereby incorporate and reallege all of the allegations contained in Paragraphs 1 – 39 above.

41. Defendants, at all times acting under color of state law, have created and implemented election policies and practices that unfairly and substantially burden certain voters, in particular African American voters, voters from larger urban areas and young student voters, both from voting and from having their votes, if cast, counted and tabulated as are the

votes of other voters. These policies and practices have resulted in arbitrary, capricious and disparate treatment of voters from county to county and precinct to precinct. There is no rational basis for the aforementioned policies, let alone a reasonable basis.

42. As a result, certain Ohio citizens, primarily African American voters, voters from larger urban areas and young student voters, eligible and desiring to vote, do not have fair and reasonable access to the franchise.

**SECOND CLAIM: (Violation of Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983)**

43. Plaintiffs hereby incorporate and reallege all of the allegations contained in Paragraphs 1 – 42 above.

44. Acting under color of state law, Defendants have created and implemented policies and practices that deprive eligible Ohio citizens, including individual plaintiffs, of their liberty interest in voting and do so without due process before or after an election. The lack of adequate process has frustrated the purposes of the organizational plaintiffs in ensuring that their members are able to register to vote, cast ballots, and have their votes properly and equally counted.

**THIRD CLAIM : (Conspiracy Claim)**

45. Plaintiffs hereby incorporate and reallege all of the allegations contained in Paragraphs 1 – 44 above.

46. Acting under the color of state law, defendants conspired and agreed to violate plaintiffs' rights secured under the Due Process and the Equal Protection Clauses of the Fourteenth Amendment and under the Thirteenth Amendment of the United States Constitution. Defendants and each of them have conspired and agreed to devise, implement, enforce,

11

encourage, sanction, and/or failed to rectify policies and practices under which the plaintiffs were and/or will be denied the right to vote and to have their votes fairly counted.

**FOURTH CLAIM: (Actions Taken Pursuant to Invidious Racial Animus in Violation of the Thirteenth Amendment and 42 U.S.C. §1985(3) )**

47. Plaintiffs hereby incorporate and reallege all of the allegations contained in Paragraphs 1 – 46 above.

48. At all times herein the defendants conspired to act and did act pursuant to that conspiracy to violate the rights of the plaintiffs, secured by the Constitution and laws of the United States, as set forth above.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiffs request respectfully request that this Court enter judgment:

1. Declaring that large numbers of African Americans were deprived the right to vote and the equal protection of the laws because Defendants, in a selective and discriminatory manner, unfairly allocated voting machines, purged voter registrations, failed to timely set precinct boundaries, maintained faulty voting machines in precincts containing high numbers of African Americans, and maintained an unfair system of provisional ballots, that disproportionately and negatively effected African American voters;

2. Declaring that absent strengthening the security of Ohio's election system,

plaintiffs have a reasonable basis to believe that the integrity of future Ohio elections is compromised;

3. Declaring that if the administration of Ohio elections remains as it was in 2004, without adequate and reasonable mechanisms to facilitate prompt access to vote, plaintiffs have a reasonable basis to believe that targeted voter suppression tactics will continue to be employed;

4. Declaring that Defendants' conduct have undermined and will continue to undermine the most fundamental constitutional and statutory voting rights provided under the Constitution and laws of the United States;

5. Permanently enjoining Defendant Blackwell as Ohio Secretary of State prior to the next statewide general election: (1) from violating Plaintiffs' constitutional rights, including the right to vote and the right to equal protection of the laws, and 42 U.S.C. §§ 1983 and 1985; (2) to appoint a special master who would be responsible for evaluating Ohio election practices and procedures and to ensure that Ohio's elections are administered fairly, that uniform practices and procedures are put in effect for the administration of Ohio's elections, and that these uniform practices and procedures are carried out in a neutral and effective manner;

6. Awarding plaintiffs their reasonable attorneys fees and costs in bringing this action, pursuant to 42 U.S.C. §1988;

7. Provide any and all relief, furnish suitable remedies and punish offenses against the law, not otherwise available, consistent with the laws and the Constitution of the United States, in accordance with 42 U.S.C. §1988 (a); and

8. Providing such other and further relief as the court may deem just and proper.

13

Dated: Columbus, Ohio
August 31, 2006

Respectfully submitted,

MARSHALL AND MORROW LLC

By: _____
John S. Marshall (0015160)
(*jmarshall@ee.net*)
Trial Counsel for Plaintiffs
Edward R. Forman (0076651)
(*eforman@ee.net*)
Steven D. Dransfield (0080271)
(*sdransfield@ee.net*)
111 West Rich Street, Ste. 430
Columbus, Ohio 43215-5296
(614) 463-9790

ARNEBECK LAW OFFICE
Clifford O. Arnebeck, Jr. (0033391)
(*arnebeck@aol.com*)
341 South Third Street, Ste. 10
Columbus, Ohio 43215
(614) 224-8771

OF COUNSEL:

CENTER FOR CONSTITUTIONAL RIGHTS
William Goodman
666 Broadway, 7th fl.
New York, N.Y. 10012
(212) 614 6427

Louis A. Jacobs (0002101) (*LAJOhio@aol.com*)
66871 Rayo del Sol
Desert Hot Springs, CA 92240-1871
(614) 203-1255

1305615v2

14