# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| KING LINCOLN BRONZEVILLE NEIGHBORHOOD ASSOCIATION, et al., | : : : |
| Plaintiffs, | : : |
| v. | : **JUDGE ALGENON L. MARBLEY** : |
| J. KENNETH BLACKWELL, et al., | **Case No. C2 06 745** : : |
| Defendants. | : |

### MEMORANDUM OF LAW OF SECRETARY OF STATE J. KENNETH BLACKWELL REGARDING 2004 BALLOTS IN THE POSSESSION OF COUNTY BOARDS OF ELECTION.

Now comes Defendant, J. Kenneth Blackwell, by and through counsel, and for his Memorandum of Law regarding 2004 ballots in the possession of County Boards of Election states as follows:

### I.     OVERVIEW.

This matter was filed by Plaintiffs on August 31, 2006. Since the filing of this lawsuit, the Plaintiffs have expressed a desire to examine ballots from the 2004 Presidential election currently in the possession of and under the safekeeping of the 88 County Boards of Election in Ohio. Plaintiffs have further expressed a concern that pursuant to O.R.C. § 3505.31, the County Boards of Election are directed, after the passage of twenty-two (22) months from the election (which date expired September 3, 2006) to dispose of the ballots. Plaintiffs now seek an Order from this Court directing Secretary of State Blackwell to issue a directive to the County Boards of Election prohibiting destruction of the 2004 ballots. As will be discussed below, Secretary of State Blackwell

293878

-1-

is not empowered to do so.

Instead, it is clear, as discussed below, that this Court has the inherent power to enjoin the 88 County Boards of Election from destroying the 2004 ballots at issue in this case. In fact, such a remedy would not only accomplish the request of the Plaintiffs in preserving the ballots, but also is much more effectively enforced than a directive from the Secretary of State's Office. What better way to ensure that these ballots are preserved than an Order directly from this Court to the several Boards of Election prohibiting destruction?

Secretary of State Blackwell agrees with the Plaintiffs that the ballots at issue in this case should be preserved. However, compelling the Secretary of State to issue Orders to the respective Boards of Elections, which may or may not comply, puts the Secretary in a "no-win" situation. Holding the Secretary in contempt for the actions of third-parties over which he has only limited control certainly does not serve the interests of any party to this litigation including the Plaintiffs. As noted by United States District Court Judge Kathleen O'Malley in a recent hearing on another voting matter, the Secretary of State is constrained to act within the bounds of the law and the power conferred upon him by the legislature. The Court, in its final statements after a hearing on a preliminary injunction, made the following remarks regarding the role of the Secretary of State:

> **Clearly the Secretary of State at this point thought that the Secretary of State was implementing the law that was handed to him by the legislature.**

*Project Vote v. Blackwell,* 06-CV-01648 (N.D. Ohio, 2006).

In the *Project Vote* case, the Secretary of State was accused by the plaintiffs of abridging the constitutional rights of individuals who are paid to register others to vote. However, as the court noted above, the Secretary was doing nothing but following the dictates of House Bill 3, the Election

Reform Statute passed by the Ohio's Legislature which included restrictions on paid voter registrars.

The Plaintiffs in this case have made similar allegations against the Secretary accusing him of interfering with the rights of the parties represented by the plaintiffs to vote in general elections. However, the fact is, the Secretary is and has been doing nothing more than that which he is commanded to and prohibited from doing by the Ohio Legislature. In regard to the Order that is currently requested by the Plaintiffs directed to Secretary Blackwell regarding preservation of 2004 ballots, such an Order would carry in the implication that Secretary Blackwell has done something wrong. Nothing could be further from the truth. As stated above, the Secretary agrees with the Plaintiffs that the 2004 ballots should be retained as requested. However, an Order from this Court compelling action by the Secretary and leaving out the real parties in interest in this case, the 88 County Boards of Election, may not ultimately serve to deliver the remedy requested by Plaintiffs.

## II. POWERS CONFERRED ON THE SECRETARY OF STATE BY STATUTE.

As has been noted by this Court, O.R.C. § 3501.05 confers to the Secretary of State, as the Chief Elections Officer for the State of Ohio, some general powers and duties. These powers include:

> (A) Appoint[ing] all Members of the Boards of Election;
>
> (B) Advise[ing] Members of such Boards as to the proper methods of conducting elections;
>
> (C) Prepare[ing] Rules and instructions for the conduct of elections;
>
> \*   \*   \*

O.R.C. § 3501.05.

Similarly, O.R.C. § 3501.11 prescribes the powers and duties of the County Boards of Election. These powers and duties include providing for purchase, preservation and maintenance of equipment used in elections, contracting for the printing of ballots and other supplies, causing polling places to be "suitably provided with stalls and other required supplies," etc. See O.R.C. § 3501.11(C), (F), (I).

In addition to the general duties and responsibilities outlined in the previous Code Sections, the Ohio Elections Law contains very specific provisions regarding specific issues such as maintenance and destruction of ballots. O.R.C. § 3505.31 entitled "**Disposition of Ballots, Pollbooks, Poll Lists and Tally Sheets,**" states in regard to preservation and destruction of ballots as follows:

> The board shall carefully preserve all ballots prepared and provided by it for use in an election, whether used or unused, for sixty days after the day of the election, except that, if an election includes the nomination or election of candidates for any of the offices of president, vice-president, presidential elector, member of the senate of the congress of the United States, or member of the house of representatives of the congress of the United States, the board shall carefully preserve all ballots prepared and provided by it for use in that election, whether used or unused, for twenty-two months after the day of the election. If an election is held within that sixty-day period, the board shall have authority to transfer those ballots to other containers to preserve them until the sixty-day period has expired. <u>After the sixty-day period, the ballots **shall** be disposed of by the board in a manner that the board orders, or where voting machines have been used the counters may be turned back to zero; provided that the secretary of state, within that sixty-day period, may order the board to preserve the ballots or any part of the ballots for a longer period of time, in which event the board shall preserve those ballots for that longer period of time</u>. (emphasis added).

As the Court can see from this statutory provision, the General Assembly has given very specific instructions as to when the Secretary of State may, and may not, order Boards of Election

to maintain ballots for a period of time longer than that prescribed by statute. As stated above, the Secretary of State may <u>only</u> order that the Board to "preserve ballots or any part of the ballots for a longer period of time," within a sixty-day period following the election. The Statute makes no provision allowing the Secretary to order any longer retention of ballots than in those circumstances outlined in O.R.C. § 3505.31. In fact, as noted by the Ohio Attorney General in Opinion No. 2004-050, "Although the General Assembly has provided preservation alternatives for ballots that must be preserved for sixty days, there is no similar preservation alternative for those ballots that must be preserved for twenty-two months." 2004 Ohio Op. Atty Gen. No. 50 at fn 17.

It is well-settled that specific statutory provisions prevail over the mandates of general statutes. **_Trumbull Cty Bd. of Health v. Snyder_** (1996), 74 Ohio St. 3d 357, 359 (citations omitted). Therefore, the specific records retention issues addressed in O.R.C. § 3505.31 clearly control over the general conference of powers on the Secretary found in O.R.C. § 3501.05. As such, the Secretary of State simply does not have statutory power to do what is requested by Plaintiffs in this case, that is, issue Orders to the 88 County Boards of Election directing the Board to retain 2004 ballots passed the statutory retention mandates of O.R.C. § 3505.31.

However, there is much more effective, expedient and legally correct manner in which to accomplish the Plaintiffs' goals as outlined below.

### III. THIS COURT HAS INHERENT POWER TO ISSUE AN ORDER PROHIBITING DESTRUCTION OF THE 2004 BALLOTS DIRECTLY TO AND BINDING UPON THE 88 COUNTY BOARDS OF ELECTION.

As has been consistently recognized by Federal Courts, there are several methods available by which a Court can exercise its jurisdiction over and, in fact, enjoin the conduct of a non-party.

As noted by the Sixth Circuit:

> One means through which a Court can exercise personal jurisdiction over a non-party is through its "inherent jurisdiction to preserve [its] ability to render judgment" and "make a binding adjudication between the parties properly before it." (citations omitted) **A federal court may properly exercise its inherent jurisdiction and enjoin a non-party if his actions would disturb "in any way the adjudication of rights and obligations as between the original plaintiffs and defendants."** (citations omitted)(emphasis supplied).

*IN RE: NAACP*, 849 F.2d 1473, HN 6 (6th Cir. 1988). In fact, the United States Supreme Court has affirmed the inherent power of a court "to issue an order to preserve the status quo in order to protect its ability to render judgment in a case over which it might have jurisdiction." *U.S. v. Hall*, 472 F.2d 261, HN 1 (5th Cir. 1972) citing *Walker v. Birmingham* (1967), 388 U.S. 307, 343-344; 87 S. Ct. 1824.

In addition, "the mandate of an injunction issued by a federal district court runs throughout the entire nation." *Bedel v. Thompson* (1992) U.S. App. LEXIS 3751 (6th Cir. 1992)(citing *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451 (1932)).

In the case of *U.S. v. Hall, supra*, the court issued an injunction regarding the segregation of schools in Duval County, Florida. The order by its own terms enjoined the conduct of all persons "having notice of this order," whether or not such persons were a party to the litigation. *Hall, supra* at 263. Eric Hall, a non-party to the original injunction, was caught violating the court order and was ultimately found guilty of criminal contempt and sentenced to 60 days in prison. *Id.* at 264. On appeal, the Fifth Circuit upheld the conviction stating that District Courts have inherent authority to enjoin the conduct of non-parties should that conduct interfere with the exercise of the court's judgment as between the original plaintiffs and defendants to the litigation. *Id.* at 267-268. In doing so the court stated as follows:

> School orders are, like in rem orders, particularly vulnerable to disruption by an undefinable class of person who are neither parties nor acting at the instigation of parties. In such cases, **as in voting rights cases**, courts must have the power to issue orders similar to that issued in this case, tailored to exigencies of the situation and directed to protecting the court's judgment. . . . (citations omitted).

*Id.* at 266. (emphasis supplied).

The court went on to examine the argument made by the defendant that injunctions against non-parties could only be issued subject to the dictates of Fed. R. Civ. P. 65(d). Rule 65 in regard to Injunction of Non-Parties states that such injunctions or restraining orders may be binding " . . . only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed. R. Civ. P. 65(d). In holding that the court's inherent authority to enjoin interference with the administration of justice went beyond the dictates of Civ. R. 65, the court stated:

> In examining this contention we start with the proposition that Rule 65 was intended to embody "the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in privity with them, represented by them, or subject to their control." (citations omitted). Literally read, Rule 65(d) would forbid the issuance of in rem injunctions. (citations omitted). But courts have continued to issue in rem injunctions notwithstanding Rule 65(d), since they possess the power to do so at common law and since Rule 65(d) was intended to embody rather than to limit their common law powers. (citations omitted).
>
> Similarly we conclude that Rule 65(d), as a codification rather than a limitation, of courts' common-law powers, cannot be read to restrict the inherent power of a court to protect its ability to render a binding judgment. (citations omitted).

*Id.* at 267.

The reasoning and analysis in the ***Hall*** case as cited above, is equally applicable to the case at bar. As specifically pointed out by the court, voting rights cases embody a situation where courts must be allowed to "tailor" the exigencies of the situation and "protect" the court's judgment. In the present case, the actions of the non-party Boards of Election may significantly impact the power of this Court to adjudicate the claims as between the named Plaintiffs and Defendants. In such a situation, the Court is clearly empowered to issue an Order directly to each of the 88 County Boards of Election enjoining destruction of the 2004 ballots as requested by Plaintiffs. Not only does this Court have jurisdiction and inherent authority to issue such an Order, such an Order would be the most effective implementation of the Plaintiffs' wishes. An Order from this Court directly to the Boards of Election would effectively remove the "middleman," Secretary Blackwell, from the equation and lead to much more effective enforcement of this Court's Orders.

In addition, Plaintiffs have available the discovery tools outlined in Fed. R. of Civ. P. 37 which specifically allow for application to the Court "compelling disclosure or discovery," "to a person who is not a party . . . ." Rule 37(a)(1). The Plaintiffs in this case need merely apply to this Court for an order compelling production by the 88 County Boards of Election of the disputed 2004 ballots. Should these non-parties not comply with this Court's Discovery Order, this Court is empowered to sanction the non-parties pursuant to Rule 37.

In short, there are many more effective ways to ensure that the 2004 ballots are not destroyed by non-parties than ordering the Defendant Secretary of State to issue a mandate to the Boards of Election when Ohio law does not empower him to do so.

For the reasons set forth above, Defendant Secretary of State of Ohio, J. Kenneth Blackwell, urges this Court to issue any applicable Order directly to the third-parties in control of the 2004

ballots at issue in this case, the 88 County Boards of Election as opposed to issuing an Order to the Boards through the Office of the Secretary of State. A proposed Order is attached.

Respectfully submitted,

**JIM PETRO (0022096)**
**ATTORNEY GENERAL OF OHIO**

/S/ Larry H. James
**Larry H. James (0021773)**
**Christina L. Corl (0067869)**
Crabbe, Brown & James
500 South Front Street, Suite 1200
Columbus, OH 43215
Tel: (614) 228-5511
Fax: (614) 229-4559
e-mail: ljames@cbjlawyers.com
　　　　ccorl@cbjlawyers.com
*Counsel for Defendant J. Kenneth Blackwell*
*Ohio Secretary of State*

**Richard N. Coglianese (0066830)**
Deputy Attorney General
Ohio Attorney General
Constitutional Offices Section
30 East Broad Street, 16th & 17th Floors
Columbus, OH 43215
Tel: (614) 466-2872
Fax: (614) 728-7592
e-mail: rcoglianese@ag.state.oh.us

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served upon all counsel of record via the Court's electronic filing system on September 7, 2006.

/S/ Larry H. James
**Larry H. James**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KING LINCOLN BRONZEVILLE NEIGHBORHOOD ASSOCIATION, et al., | : |
| | : |
| Plaintiffs, | : |
| | : JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : Case No. C2 06 745 |
| J. KENNETH BLACKWELL, et al., | : |
| | : |
| Defendants. | : |

## ORDER

Upon application of plaintiffs, and after considering the arguments of counsel and memoranda of the parties, the Court deems it necessary and appropriate, pursuant to the Court's inherent power, to issue this Order to ensure the preservation of certain evidence. The Court hereby ORDERS the Boards of Election for each of the 88 Counties for the State of Ohio to forthwith preserve all ballots from the 2004 Presidential election, on paper or in any other format, including electronic data, unless and until such time otherwise instructed by this Court. Counsel for Plaintiffs is hereby instructed to serve a copy of this Order upon the Boards of Election for each of the 88 Counties for the State of Ohio.

IT IS SO ORDERED.

_____
ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE

Copies to:

John S. Marshall, Counsel for Plaintiffs.
Clifford O. Arnebeck, Jr., County for Plaintiffs.
Larry H. James & Christina L. Corl, Counsel for Defendants.
Richard N. Coglianese, Counsel for Defendants.

293878