## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **KING LINCOLN BRONZEVILLE** | : | |
| **NEIGHBORHOOD ASSOCIATION, et al.** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 06-CV-745** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **J. KENNETH BLACKWELL, et al.** | : | **Magistrate Judge Kemp** |
| | : | |
| **Defendants.** | : | |
| | : | |

### OPINION AND ORDER

### I.  INTRODUCTION

This matter comes before the Court on Plaintiffs' request that Defendant J. Kenneth Blackwell, the Secretary of State for the State of Ohio, be ordered to issue a directive to all county boards of elections in the State of Ohio, directing them to preserve all ballots from the 2004 presidential election, which are the subject matter of this case.  Defendant Blackwell contends that he does not have authority to issue such a directive.

### II.  BACKGROUND

On August 31, 2006, Plaintiffs, a collection of civic organizations and individuals, filed a complaint in federal court against Defendants, J. Kenneth Blackwell, the Secretary of State for the State of Ohio, and various unnamed public election officials and private contractors who provided services to the State of Ohio, alleging that Defendants had violated Plaintiff's civil and constitutional rights.  Plaintiffs claim, *inter alia*, that during the November 2004 presidential election, "Defendants selectively and discriminatorily designed and implemented procedures for

Dockets.Justia.com

the allocation of voting machines in a manner to create a shortage in the number of machines for certain urban precincts wherein large numbers of African American voters resided." Plaintiffs seek to enjoin Defendant Blackwell from violating Plaintiffs' constitutional rights prior to the next statewide election, and they seek to appoint a special master, who would be responsible for evaluating Ohio's election practices and procedures and ensuring that Ohio's elections are administered fairly. Additionally, Plaintiffs request declaratory relief in their complaint.[1] After they filed this lawsuit, Plaintiffs, on that same day, sent a letter to each of Ohio's eighty-eight (88) county boards of elections that notified them to preserve the election ballots from the November 2004 presidential election.

### III. ANALYSIS

Pursuant to Ohio Revised Code § 3501.04, "[t]he secretary of state is the chief election officer of the state, with such powers and duties relating to the registration of voters and the conduct of elections as are prescribed in Title XXXV of the Revised Code." OHIO REV. CODE § 3501.04. As the chief election officer of Ohio, the secretary of state "[a]ppoint[s] all members of boards of elections," "[i]ssue[s] instructions by directives and advisories to members of the

---

[1]The complaint requests declaratory judgments that (1) "large numbers of African Americans were deprived the right to vote and the equal protection of the laws because Defendants, in a selective and discriminatory manner, unfairly allocated voting machines, purged voter registrations, failed to timely set precinct boundaries, maintained faulty voting machines in precincts containing high numbers of African Americans, and maintained an unfair system of provisional ballots, that disproportionately and negatively effected African American voters," (2) "absent strengthening the security of Ohio's election system, plaintiffs have a reasonable basis to believe that the integrity of future Ohio elections is compromised," (3) "if the administration of Ohio elections remains as it was in 2004, without adequate and reasonable mechanisms to facilitate prompt access to vote, plaintiffs have a reasonable basis to believe that targeted voter suppression tactics will continue to be employed," and (4) "Defendants' conduct ha[s] undermined and will continue to undermine the most fundamental constitutional and statutory voting rights provided under the Constitution and laws of the United States[.]"

boards as to the proper methods of conducting elections," and "[p]repare[s] rules and instructions

for the conduct of elections," among other things.  OHIO REV. CODE § 3501.05.

Ohio's statutory scheme provides for the retention and disposition of ballots following

elections.  Generally, a county board of elections must preserve ballots for sixty (60) days

following the election; however, in the case of presidential elections, as was the 2004 election at

issue, the county board of elections is required to preserve the ballots for twenty-two months

(22) months after the day of the election.  OHIO REV. CODE § 3505.31.  That section, in relevany

part, provides:

> The board shall carefully preserve all ballots prepared and provided
> by it for use in an election, whether used or unused, for sixty days
> after the day of an election, except that, if the election includes the
> nomination or election of candidates for any of the offices of
> president, vice president, presidential elector, member of the senate
> of the congress of the United States, or member of the house of the
> congress of the United States, the board shall carefully preserve all
> ballots prepared and provided by it for use in that election, whether
> used or unused for twenty-two months after the day of the election.
> If an election is held within that sixty-day period, the board shall
> have authority to transfer those ballots to other containers to
> preserve them until the sixty-day period has expired . . . .  After that
> sixty-day period, the ballots shall be disposed of by the board in a
> manner that the board orders, or where voting machines have been
> used the counters may be turned back to zero; provided that the
> secretary of state, within that sixty-day period, *may order the board
> to preserve the ballots or any part of the ballots for a longer period
> of time, in which event the board shall preserve those ballots for
> that longer period of time.*

*Id*. (emphasis added).

In addition to the statutory requirement that ballots in presidential elections be preserved,

Defendants are obligated to preserve the ballots because they are the subject matter of this

lawsuit.  The duty to preserve relevant evidence commences prior to the filing of the action, once

3

the defendant reasonably anticipates an action may be forthcoming. *See Silvestri v. General Motors*, 271 F.3d 583, 590 (4th Cir. 2001); *Kronish v. United States*, 150 F.3d 112, 126 (2nd Cir. 1998); *see also Beck v. Haik*, 377 F.3d 624, 641 (6th Cir. 2004) ("A trial court has the authority . . . to sanction a party for failing to preserve evidence that it knows or should know is relevant before litigation is commenced"); *United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir.2002) (discussing when defendant has a duty to preserve records prior to commencement of litigation); *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2nd Cir. 2001) (observing that a district judge has discretion to impose an appropriate sanction when he or she has determined that a party on notice of its obligation to preserve evidence intentionally destroyed it); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) (defining inquiry as whether party that destroyed documents "was on notice that the [documents] had potential relevance to litigation").[2]  Here, Defendants' duty to preserve the ballots in question began when each county board of elections office received a letter from Plaintiffs, indicating that this lawsuit was filed and requesting that the ballots be preserved because they are the subject matter of this suit.

In this case, the Court finds that, pursuant to Ohio Revised Code § 3501.05, Defendant Blackwell does have the authority to issue a directive to Ohio's 88 county boards of elections to preserve the presidential election ballots from November 2004.  Because Plaintiffs filed this

---

[2] *But see United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir.2002) (holding that defendants did not engage in spoliation of evidence when records were intentionally destroyed in accordance with a document retention policy and state regulations before litigation commenced).  Here, the ballots could not have been destroyed lawfully at any time before this litigation commenced because Plaintiffs filed their complaint before the twenty-two (22) month preservation period, set forth in Ohio Revised Code § 3505.31, had expired.

lawsuit against Defendants on August 31, 2006, prior to the expiration of the twenty-two month preservation period set forth in section 3505.31 of the Ohio Revised Code, and because the 2004 election ballots are the subject matter of this litigation, Defendant Blackwell is obligated to preserve those ballots while this case is pending before the Court.  As the chief election officer of the state, Defendant Blackwell is authorized to issue a directive to all county board of elections offices, instructing them to preserve the 2004 election ballots.  *See* OHIO REV. CODE §§ 3501.04, 3501.05, and 3505.31.  Furthermore, if any board of elections employees do not comply with Defendant Blackwell's directives, they are subject to discipline under sections 3501.16[3] and 3599.16[4] of the Ohio Revised Code.

Nevertheless, the Court need not order Defendant Blackwell to issue a directive to make certain that county board of elections offices preserve the 2004 election ballots.  Instead, this

---

[3]Section 3501.16 provides that "[t]he secretary of state may summarily remove or suspend any member of a board of elections . . . for neglect of duty, malfeasance, misfeasance, or nonfeasance in office, for any wilful violation of Title XXXV of the Revised Code, or for any other good and sufficient cause."  OHIO REV. CODE § 3501.16.

[4]Section 3599.16 provides, *inter alia*:

> No member, director, or employee of a board of elections shall:
> (A) Willfully or negligently violate or neglect to perform any duty imposed upon him by law, or willfully perform or neglect to perform it in such a way as to hinder the objects of the law, or willfully disobey any law incumbent upon him to do so; . . . [or]
> (F) In any other way willfully and knowingly or unlawfully violate or seek to prevent the enforcement of any other provisions of the election laws.

> Whoever violates this section shall be dismissed from his position as a member or employee of the board and is guilty of a felony of the fourth degree.

OHIO REV. CODE § 3599.16.

Court has the inherent power to issue an order directly upon the county boards of elections, even though they are not actual parties to this litigation.  *See Bedel v. Thompson*, 956 F.2d 1164, at *4 (6th Cir. Mar. 4, 1992) (holding that "[a] court has the inherent authority to enforce its own injunctive decree" and that "[t]he mandate of an injunction issued by a federal district court runs throughout the entire nation."); *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451 (1932).  Speaking to this inherent authority, the Sixth Circuit held that "[o]ne means through which a court can exercise personal jurisdiction over a nonparty is through its 'inherent jurisdiction to preserve [its] ability to render judgment' and 'make a binding adjudication between the parties properly before it.'"  *In re N.A.A.C.P., Special Contribution Fund*, 849 F.2d 1473, at *4 (6th Cir. June 13, 1988) (quoting *United States v. Hall*, 472 F.2d 261, 265 (5th Cir. 1972)).  The *N.A.A.C.P.* court further explained that federal courts can exercise their inherent jurisdiction and enjoin a non-party if the non-party's actions would "disturb in any way the adjudication of rights and obligations as between the original plaintiffs and defendants."  *Id*. (citing *Hall*, 472 F.2d at 265).  In *Hall*, the Fifth Circuit upheld a defendant's criminal contempt conviction after the defendant was found to have violated wilfully a court-ordered injunction to not interfere with school desegregation.  472 F.2d 261.  The court affirmed the defendant's conviction even though he was not an actual party to the original case in which the court issued the injunction.  *Id*. at 265.  In describing a district court's fundamental power to enjoin the actions of a non-party, the court held:

> School orders are, like in rem orders, particularly vulnerable to disruption by an undefinable class of persons who are neither parties nor acting at the instigation of parties.  In such cases, *as in voting rights cases*, courts must have the power to issue orders similar to that issued in this case, tailored to the exigencies of the situation and directed to protecting the court's judgment.

6

472 F.2d at 266 (emphasis added).

It is beyond peradventure that the 2004 election ballots, which are presently in the custody of Ohio's 88 county boards of elections, are at issue in this case and should be preserved.  Indeed, the parties so agree.  If the 2004 election ballots are destroyed or disposed of now, it clearly would disturb the adjudication of rights and obligations between Plaintiffs and Defendants.  This Court concludes that the most effective way to preserve those election ballots during this litigation is for it to enjoin directly each Ohio county's board of elections from destroying them.  *See In re N.A.A.C.P.*, 849 F.2d at *4; *Hall*, 472 F.2d 261, 265–66.  In the event the Court discovers that any Defendant or any non-party to this case, such as an employee of a county's board of elections, has destroyed or disposed of 2004 presidential election ballots in violation of this Order, it may impose an appropriate discovery sanction.  FED. R. CIV. P. 37(b)(2)(D) (authorizing a court to hold a person in contempt of court when the person fails to obey an order).

Therefore, the Court hereby **ORDERS** the Boards of Election for each of the 88 Counties for the State of Ohio forthwith to preserve all ballots from the 2004 Presidential election, on paper or in any other format, including electronic data, unless and until such time otherwise instructed by this Court.

**IT IS SO ORDERED.**

/s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 11, 2006**

7