# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| KING LINCOLN BRONZEVILLE NEIGHBORHOOD ASSOCIATION, et al., | : Case No. C2 06 745 |
| | : |
| | : JUDGE ALGENON L. MARBLEY |
| Plaintiffs, | : |
| v. | : MAGISTRATE JUDGE KEMP |
| | : |
| J. KENNETH BLACKWELL, et al., | : |
| | : |
| Defendants. | : |

### DEFENDANT J. KENNETH BLACKWELL, SECRETARY OF THE STATE OF OHIO'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

Now comes Defendant, J. Kenneth Blackwell, Secretary of the State of Ohio, by and through counsel, and for his Brief in Opposition to Plaintiffs' Motion for Temporary Restraining Order (filed Friday, November 3, 2006), hereby requests this Honorable Court to deny the Temporary Restraining Order and requested relief. A Memorandum in Support is attached hereto and incorporated by reference.

Respectfully submitted,

**JIM PETRO (0022096)**
**ATTORNEY GENERAL OF OHIO**

/S/ Larry H. James
**Larry H. James             (0021773)**
**Christina L. Corl          (0067869)**
CRABBE, BROWN & JAMES, LLP
500 South Front Street, Suite 1200
Columbus, OH 43215
Tel:   (614) 228-5511
Fax:  (614) 229-4559
e-mail: ljames@cbjlawyers.com
          ccorl@cbjlawyers.com
*Special Counsel for Defendant J. Kenneth Blackwell, Ohio Secretary of State.*

Dockets.Justia.com

JIM PETRO  (0022096)
ATTORNEY GENERAL OF OHIO

/S/ Richard N. Coglianese
**Richard N. Coglianese      (0066830)**
Deputy Attorney General
Ohio Attorney General
Constitutional Offices Section
30 East Broad Street, 16th & 17th Floors
Columbus, OH  43215
Tel:    (614) 466-2872
Fax:    (614) 728-7592
e-mail: rcoglianese@ag.state.oh.us
*Counsel for Defendant, J. Kenneth Blackwell, Secretary of State of Ohio.*

## MEMORANDUM IN SUPPORT

**I.    INTRODUCTION.**

This Court must deny Plaintiffs' Temporary Restraining Order for the following reasons:

1. Plaintiffs have failed to allege any facts to demonstrate that they have standing to make such a request.

2. The relief requested by Plaintiffs, even if ordered by this Court, is physically impossible to accomplish at this late date.

3. This litigation filed by Plaintiffs has been pending since August, and Plaintiffs have failed to explain why they waited in excess of two (2) months to make a request for "emergency" relief.

For the reasons set forth below, Defendant J. Kenneth Blackwell, Secretary of the State of Ohio, requests this Honorable Court to deny Plaintiffs' Motion for a Temporary Restraining Order in its entirety.

## II. LAW AND ARGUMENT.

### A. Plaintiffs Lack Standing To Bring This Motion.

As has been recently addressed by the Sixth Circuit Court of Appeals, it is the burden of the Plaintiffs to demonstrate either associational standing or standing for the individual Plaintiffs named in this suit. Plaintiffs have not even approached meeting this burden. As stated by the Sixth Circuit:

> "For an association's members to 'otherwise have standing to sue in their own right,' they must have (1) 'suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or eminent, not conjectural or hypothetical'; (2) 'the injury has to be fairly traceable to the challenged action of the defendant'; and (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"

*Northeast Ohio Coalition for the Homeless v. Blackwell*, Nos. 06-4412/06-4421 (6th Cir., 2006) at *16 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). As in the *Northeast Ohio Coalition* case, Plaintiffs' allegations in this matter ". . . fall far short of asserting that any of plaintiffs' members have suffered or will imminently suffer a concrete, actual injury traceable [to any action or inaction by Defendant]." *Id.* at *17.

A review of the unverified Amended Complaint in this case, demonstrates that there are no allegations in the Complaint that would confer standing for the relief requested in the Temporary Restraining Order. Specifically, there are no allegations by any organizational or individual Plaintiff asserting that any of them will suffer irreparable harm by the failure to provide paper ballots or by not conducting a hand count audit as requested by Plaintiffs. A review of Plaintiffs' Motion for Temporary Restraining Order demonstrates a similar result. Plaintiffs have made no allegations in their Motion for Temporary Restraining Order that would confer standing either to the associational

Plaintiffs or individual Plaintiffs.

Plaintiffs also attach to their Motion for a Temporary Restraining Order various declarations and affidavits, none of which are made by any individual Plaintiff in this case, nor by any individual who states that he is a member of the organizational Plaintiffs. Plaintiffs have attached with their Motion the Affidavit of Steven Freeman, the Declaration of Robert Fitrakis, the Declaration of Margaret Rosenfield, the Declaration of Samuel Gresham, and the Declaration of Thomas Betti. Notably, none of these declarants or affiants are individually named Plaintiffs in this case. Further, while one or more may hold some sort of advisory position with the organizational Plaintiffs, none of the affiants or declarants are "members" of any of the organizational Plaintiffs.

Once again, as stated by the Sixth Circuit:

> "The notion that plaintiff organizations could obtain emergency injunctive relief from a Federal Court, relief which has the effect of disrupting an ongoing election process in frustration of the duly enacted will of the people of a sovereign state, based on allegations admittedly unsupported by evidence <u>that any of the organizations' members has been injured or is threatened with imminent injury</u>, represents a disturbing expansion of associational standing principles."

***Northeast Ohio Coalition for the Homeless***, ***supra***, (McKeague, concurring.)(emphasis supplied).

The same is true in the present case, Plaintiffs have presented no evidence that even one single individual Plaintiff or member of an organizational Plaintiff has or will imminently suffer concrete injury. Plaintiffs have not identified one single person who will in any fashion be impacted should this Court grant the requested relief or not. While Plaintiffs have submitted with their Motion opinion pieces on various election issues, not one submission from the Plaintiffs is sufficient to confer the standing to request the relief sought.

## B. The Relief Requested By Plaintiffs Is Physically Impossible.

Assuming, arguendo, that this Court would even consider awarding the extraordinary relief sought by the Plaintiffs, compliance with any such Order would be physically impossible.

As this Court knows, United States Congress passed the Help America Vote Act of 2002. As stated in the preamble to the Act:

> "An Act . . . to establish a program to provide funds to the states to replace punch card voting systems, to establish the Election Assistance Commission to assist in the administration of federal elections and to otherwise provide assistance with the administration of certain federal elections laws and programs, to establish minimum election administration standards for states and units of local government with responsibility for the administration of federal elections, and for other purposes."

42 U.S.C. § 15301 *et seq*.

Based upon the mandates of HAVA, the State of Ohio has completely phased out any sort of paper balloting for the purposes of use on Election Day. (Affidavit of Judy Grady, Exhibit "A"). The State of Ohio has approximately 11,000 precincts that will be actively engaged on Election Day. (Grady Affidavit, Ex. "A"). Even if this Court should consider ordering that paper ballots be available on Election Day, compliance with such a request would be impossible. ***Id.*** (See also, Affidavit of Matthew Damschroder, Exhibit "B," ¶ 9). It simply would be impossible for the Secretary of State, the State of Ohio, or anyone else to prepare and print paper ballots for 11,000 precincts, let alone distribute such paper ballots to each precinct. ***Id.*** Simply put, Plaintiffs' request is unachievable, unattainable and out of the question.

In addition, any Order from this Court in that respect would directly conflict with and derogate the Ohio statutes regarding the conduct of the elections with electronic voting machines.

In regard to Plaintiffs' request that this Court order a "hand audit" of three percent (3%) of the votes cast in Ohio on Election Day, this request is similarly inconceivable. As stated above, a "hand count" is impossible because there are no paper ballots to count. Under the Help America Vote Act, the State of Ohio has spent $116,000,000 on electronic voting machines. There is simply no way to do a "hand count audit" prior to or at the time of tabulating the electronic voting results. (Grady Affidavit, Ex. "A"). Plaintiffs are essentially requesting that the Boards of Election be required to go through the statutorily outlined procedures for a recount prior to a final tabulation of any voting results. As this Court is aware, there is a very detailed procedure under Ohio law for the recount of votes cast in the election. These provisions have been specifically drafted to take into account the fact that Ohio is an electronic voting state and to accommodate the special requirements for recounts per an electronic voting system. See O.R.C. § 3506.01 *et seq.* (Electronic Voting and Ohio Recount Procedures). In addition, the Secretary of State has issued a Directive, which Plaintiffs' have attached to their Motion for Temporary Restraining Order, that outlines the procedure to conduct a recount under Ohio law and administrative regulations.

Amended Sub. H.B. 262, which took effect on May 7, 2004, significantly changed provisions of the Revised Code of Ohio governing voting and tabulating systems in recounts. The Act requires that, beginning with the first federal election in 2006, every direct recording electronic voting machine must produce a voter verified paper audit trail (VVPAT), defined as "a physical paper printout on which the voter's ballot choices, as registered by a direct recording electronic voting machine, are recorded." O.R.C. § 3506.01(H).

Plaintiffs have set forth nothing, other than mere speculation, that would justify the extraordinary measure of a hand audit to be ordered by this Court at the 59th minute of the 11th hour.

Plaintiffs have presented no evidence that the votes as tabulated by electronic voting machines are suspect or should be called into question. Pursuant to Ohio Statute, each Board of Elections must conduct a public pretest at which the voting machines are tested to insure accurate recordation and tabulation of ballots. O.R.C. § 3506.14. As an additional quality assurance measure, the statute further provides as follows:

> "Prior to the start of the count of the ballots, the Board of Elections shall have the voting machine or automatic tabulating equipment tested to ascertain that it will accurately count the votes cast for all offices and on all questions and issues. Public notice of the time and place of the test shall be given by proclamation or posting as in the case of notice of elections. The test shall be conducted by processing a pre-audited group of ballots so marked as to record a predetermined number of valid votes for each candidate and on each question and issue, and shall include for each office one or more ballots that have votes in excess of the number allowed by law in order to test the ability of the automatic tabulating equipment to reject those votes. In that test a different number of valid votes shall be assigned to each candidate for an office, and for and against each question and issue. If an error is detected, the cause for the error shall be ascertained and corrected and an errorless count shall be made and certified to by the Board before the count is started. The tabulating equipment shall pass the same test at the beginning and conclusion of the election day count before the election returns are approved as official."

O.R.C. § 3506.14(B).

Further, once the Election Day testing and count is completed, "**. . . the programs, test materials, and ballots shall be sealed and retained as provided for paper ballots in Section 3505.31 of the Revised Code.**" *Id.* (Emphasis supplied). As directed by statute, once the post voting testing is completed, VVPAT records are "sealed." *Id.* By statute these sealed VVPAT (paper trail) results may not be opened unless there is a properly requested recount. Based upon the statutory provisions, the relief requested by Plaintiffs would specifically contravene tested and settled state

statutory provisions specifically drafted to ensure the accuracy of voting results. Once the VVPAT paper record is unsealed for a "random audit" that is requested by Plaintiffs, the statutory procedures for conducting a recount, should one be requested, would be thrown into chaos.

Further evidence of the farcical nature of the Plaintiffs' request, is the fact that Plaintiffs are requesting relief essentially from the 88 County Boards of Elections, none of whom are parties to this litigation. As one might expect, the budget allocations to each of these 88 County Boards of Elections to conduct the elections have already been voted by their respective County Commissioners. The massive undertaking in regard to supplying paper ballots and conducting a manual audit as requested by Plaintiffs, would imply an additional hundreds of thousands of dollars in funds allocations to these Boards. This situation is distinctly different from one regarding interpretations of policies already instituted at the various Boards of Elections. Plaintiffs' request in this matter seeks to compel the 88 County Boards of Elections to undertake gargantuan and extremely costly procedures with less than 24 hours notice, and without any funding.

It would simply be an exercise in futility for this Court to order the relief requested by Plaintiffs, as it would be impossible for any defendant in this case, or the 88 County Boards of Elections to comply.

    **C.    Plaintiffs Could Have Requested This Relief Months Ago As Opposed To Filing An Emergency Request One Business Day Before The Scheduled Election.**

As previously stated, Plaintiffs filed their original Complaint in this case on August 31, 2006. Since that time, the Defendants have filed a Motion for a More Definite Statement, the Plaintiffs have filed an Amended Complaint, Defendant Blackwell has filed an Answer to the Amended Complaint, and the State of Ohio has filed a Motion to Intervene and proposed Answer to the

Amended Complaint. At no time during the several months that this matter has been pending did Plaintiffs move the Court for the relief they are currently requesting. The Sixth Circuit "require[s] that any claims against the state [election] procedure be pressed expeditiously," and has held that waiting less than a month after learning of such a claim is fatal. **_Kay v. Austin,_** 621 F.2d 809, 813 (6th Cir. 1980). The Supreme Court requires similar promptness, and it has affirmed rejection of requests made a little over a month from the election precisely because of the proximity to the election. **_Purcell v. Gonzales_**, __ U.S. __, 2006 U.S. LEXIS 8000 at **3-5 (2006). Plaintiffs have stated no reason, let alone a justifiable reason, that they have waited until one business day before the election to seek the extraordinary relief from this Court. Based upon this factor alone, Plaintiffs' request should be denied.

In addition, as is demonstrated by the Affidavit of Matt Damschroder attached hereto as Exhibit "B," the "catastrophe" which Plaintiffs claim will occur should the relief not be granted is, in fact, substantially <u>unlikely</u> to occur. Simply put, as a result of the new "no fault" absentee ballot provisions, significantly fewer voters will turn out at the polls. (Damschroder Affidavit, Ex. "B"). In fact, approximately one-quarter of the voters expected to turn out for this election have already voted absentee. **_Id._** Further, as is demonstrated by the voting machine "deployment schedule" attached to the Affidavit of Mr. Damschroder, all evidence indicates that there will be plenty of voting machines in the precincts so as to alleviate the Plaintiffs' fears of long lines. **_Id._**

Plaintiffs cite evidence of congestion at selected polling places during the 2004 Presidential Election to support their claim that these instances could recur during the upcoming election. The events in question, however, were isolated in nature and were based on record turn out. It is speculative to assume that these events will recur.

Further, the State and the Secretary of State have taken affirmative steps to ensure the adequate machines are available at all polling places. First, Ohio law now provides that each polling place must have one machine for every 175 voters. O.R.C. § 3506.22. Accordingly, on April 14, 2005, the Secretary issued Directive 2005-07 which requires Boards of Elections using DRE voting systems to deploy the machines at a ratio of one machine for every 175 registered voters. At the same time, Ohio received funds under the Help America Vote Act, which helped counties to purchase the DRE machines now required by law. There is no evidence that counties do not intend to comply with this requirement or that this requirement is not adequate. In fact, as is demonstrated by the Affidavit of Matt Damschroder attached hereto as Ex. "B", should all predictions pan out, the ratio of machines to voters will be more akin to one machine to every 71 voters. (Ex. "B," ¶ 8).

In contrast with Plaintiffs' allegations which are unencumbered by any supporting facts, the Affidavits supplied by Defendants indicate that the "horrors" which Plaintiffs predict at the polls are unlikely to come to fruition. The Boards of Elections and the Secretary of State have been working very hard to ensure that the November, 2006 Election goes smoothly. In fact, the constant filing of unsupported and unsupportable claims by the Plaintiffs has done nothing but distract the very busy men and women of the Secretary's Office and Boards of Elections from doing their jobs.

**WHEREFORE,** Secretary of the State of Ohio, J. Kenneth Blackwell, respectfully requests this Honorable Court to deny Plaintiffs' Motion for a Temporary Restraining Order in its entirety and award costs and attorneys' fees so wrongfully incurred.

Respectfully submitted,

**JIM PETRO (0022096)**
**ATTORNEY GENERAL OF OHIO**

/S/ Larry H. James
**Larry H. James (0021773)**
**Christina L. Corl (0067869)**
CRABBE, BROWN & JAMES, LLP
500 South Front Street, Suite 1200
Columbus, OH 43215
Tel: (614) 228-5511
Fax: (614) 229-4559
e-mail: ljames@cbjlawyers.com
　　　　ccorl@cbjlawyers.com
*Special Counsel for Defendant J. Kenneth Blackwell, Ohio Secretary of State.*


**JIM PETRO (0022096)**
**ATTORNEY GENERAL OF OHIO**

/S/ Richard N. Coglianese
**Richard N. Coglianese (0066830)**
Deputy Attorney General
Ohio Attorney General
Constitutional Offices Section
30 East Broad Street, 16th & 17th Floors
Columbus, OH 43215
Tel: (614) 466-2872
Fax: (614) 728-7592
e-mail: rcoglianese@ag.state.oh.us
*Counsel for Defendant, J. Kenneth Blackwell, Secretary of State of Ohio.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon all counsel of record via the Court's electronic filing system on November 6, 2006.

In addition, the following Parties were served via Regular U.S. Mail:

Ohio Republican Party
211 South Fifth Street
Columbus, OH 43215

Robert T. Bennett
211 South Fifth Street
Columbus, OH 43215

Matthew M. Damschroder
280 East Broad Street, Rm. 100
Columbus, OH 43215

Daniel Bare
76 South Riverside Drive
Batavia, OH 45103

/S/ Larry H. James
**Larry H. James**