IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| King Lincoln Bronzeville Neighborhood Association, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> J. Kenneth Blackwell, et al., <br><br> Defendants. | Case No.: No. C2-06-745 <br><br> Judge Algenon Marbley <br><br> Magistrate Judge Kemp |

SUPPLEMENTARY MEMORANDUM ON REQUESTED EQUITABLE RELIEF

*Ubi jus, ibi remedium*: where there is a right, there is a remedy. It is well-accepted that federal courts possess the implicit structural power to provide a remedy for a wrong. This remedial authority is inherent in the "judicial power" extended to the federal courts by Article III of the Constitution. Without a remedy, federal rights become mere words that prescribe limits but declare "that those limits may be passed at pleasure." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178 (1803). Pursuant to this authority, the federal courts have crafted equitable relief that goes beyond the negative injunction when such relief is necessary to remedy the constitutional wrong. *See, e.g.*, *J.I. Case v. Borak*, 377 U.S. 426, 433 (1964) (holding that federal courts have a duty to "be alert to provide such remedies as are necessary to make effective the congressional purpose" of the federal law); *Bell v. Hood*, 327 U.S. 678, 684 (1946) ("Where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief."). When some remedy or

procedure is necessary to safeguard a constitutional provision, it is the federal Court's obligation under the Constitution to provide the appropriate remedy.

A properly tailored injunction is one whose nature and scope are proportional to the nature and scope of the violation. *United States v. Virginia*, 518 U.S. 515 (1996); *Missouri v. Jenkins*, 515 U.S. 70, 88 (1995); *Milliken v. Bradley*, 418 U.S. 717, 744-47 (1974); *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15-16 (1971). In particular, the Courts have not hesitated to craft the appropriate injunctive relief when the (1) legal harm is egregious and (2) other remedies are ineffective to prevent or correct that harm. *E.g., Madsen v. Women's Health Ctr.,* 512 U.S. 753 (1994); *Swann*, 402 U.S. at 14. In addition, the Court has found the scope of injunctive relief to be properly tailored where those measures (3) address conduct causally connected to the proven harm, and (4) balance the defendants' competing interests. *See, e.g., Milliken*, 433 U.S. at 280-81 (1977) (holding that federal remedies must "take into account the interests of state and local authorities in managing their own affairs" and that remedy may include conditions which are a consequence of a constitutional violation); *Swann*, 402 U.S. at 16 ("In default by the school authorities of their obligation to proffer acceptable remedies, a district court has broad power to fashion a remedy . . . ."). In addition, the failure of the Defendant to comply with previous orders and the failure of the Defendant to correct its own errors when it has such an opportunity or to provide remediation weigh in favor of crafting remedial equitable relief. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 363 n. 8 (1996) (failure to cooperate in earlier, different case not sufficient on its own to justify broad remedial relief); *Swann*, 402 U.S. at 13 (deliberate resistance to order in earlier,

different case a factor to weigh in crafting remedial relief, particularly when deliberate resistance obstructed good-faith efforts of others to comply).

State power may not be used as "an instrument for circumventing a federally protected right," such as the right to vote, *Reynolds v. Sims*, 377 U.S. 533, 567.  Although a state has a substantial interest in the management of its elections, *Democratic Party of the United States v. La Follette*, 450 U.S. 107 (1981), the procedure utilized in holding elections may be altered by federal courts if the state practices violate federal statutes or the Constitution. U.S.Const., art. I, § 4; *see* Reynolds v. Sims, *supra.* The Plaintiffs have specifically alleged that the Defendant Blackwell, in his official and individual capacities, has engaged in an ongoing practice of depriving them of their right to vote through election fraud, recount fraud, vote suppression, dilution, and intimidation:  the legal harm presented in this case is egregious.  The failure to remedy the long lines in November 2004 with paper ballots, even when under court order to do so, constituted the unconstitutional exercise of state power to circumvent the Plaintiffs' right to vote.  In addition, the Defendant's directives on conducting a recount, particularly given the Plaintiffs' specific allegations of recount fraud in the 2004 election, constitutes the unconstitutional exercise of state power to circumvent the Plaintiffs' right to have their vote counted equally with other votes; it effectively circumvents any attempt by the Plaintiffs to show vote dilution.  *See* Directive No. 2006-50 (May 17, 2006)

Given the evidence of fraud and ballot tampering from November 2004 presented in this case, not only is the legal harm egregious, but absent the requested relief, certain to not only reoccur but also 1) to be resistant to equitable relief on the day of the election due to the Defendant's prior history of willful noncompliance and 2) to evade detection

given the Defendant's restrictive requirements for a recount. Thus, the requested equitable relief is necessary to correct past egregious harm and prevent future harm, and it is narrowly tailored to address the conduct that is casually connected to the proven harm: the failure to provide alternative means such as back-up paper ballots for voters who will wait in line or who experience malfunctioning electronic machines is a continuation of the practices in 2004 that led to large-scale disenfranchisement, vote suppression, and vote dilution. Similarly, the failure to provide for a random hand-count audit of the ballots prior to certification is a continuation of the practices in 2004 that led to breaks in the bipartisan chain of custody so that recount fraud could, and did, occur. These practices included conflicting directives on the counting of provisional ballots as well as the newly restrictive directives on holding a recount.

The evidence of electronic machine problems at the polls is abundant already. The attached Declaration by Adelle Eisner enumerates the difficulties with the electronic machines during the primary in May 2006, which resulted in waits in line; these difficulties included machine malfunction, paper trail jams, frozen machines, and improper supplies. These problems will be exacerbated by the new identification requirements. The attached excerpt from the study conducted by the Election Science Institute provides further documentation of the problems that occurred during the May primary, and several of its key recommendations center upon conducting audits. *See* attached Executive Summary, Election Science Institute DRE Analysis for May 2006 Primary, Cuyahoga County, Ohio. *See also* the attached ballot picture from early voting (November 4, 2006) in Greene County, where a voter pushed the electronic screen for "Fitrakis" and "Strickland" appeared instead.

The Defendant is incapable of preventing voter disenfranchisement, vote suppression, and vote dilution even in the face of actual knowledge that it occurred; the state's interest in management of its elections is not promoted by deferring to the incompetence of its chief elections officer. At a maximum, the Defendant is intentionally using his state power to circumvent a federally protected right; he is, thus, acting unconstitutionally and in his individual capacity, not his official capacity. Therefore, the requested equitable relief would promote the state's interest in the management of its elections by providing procedures that redress the unlawful conduct of the Defendant in his individual capacity. This Court can also take judicial notice, pursuant to Fed. R. Evid. 201, that good faith efforts and negotiations on the part of other state actors to remedy the election problems created by the Defendant have not only failed, but also that the Defendant has taken positive steps to interfere with such good faith efforts, *see, e.g.*, Directive 2006-80 (October 27, 2006) (Directive Issued to Belmont County Board of Elections "Judge Sargus, in the case of *Phil Wallace et al. v. Belmont County Board of Elections*, has placed certain mandates upon your board which have unnecessarily created a significant risk of voter fraud during the general election."); Directive 2006-85 (November 4, 2006) (Directive issued pursuant to writ of mandamus by Cuyahoga County Court of Common Pleas; although Court authorized early scanning of absentee ballots, "the Office of the Secretary of State would advise boards not to begin the scanning of absent voter's ballots prior to November 7, 2007.")

Most recently, on November 1, 2006, the Defendant issued an advisory that contradicted the prior custom and law on the appointment of observers. This advisory had the effect of not only confusing individuals who had filed for appointment of

observers, but also nullified the filings for appointment of observers by some Democratic and Independent Parties. Advisory 2006-08 (November 1, 2006). In addition, this advisory legitimized the earlier filings of the appointment of observers for the Republican Party in some, possibly all, counties. These Republican filings deviated from the proper procedure by listing names and addresses only and not specific precincts at which they would serve. *See* Appointment of Observers' List Filed by The Ohio Republican Party in the Athens County Board of Elections, 10/26/2006. This list is nearly identical to the list filed in the Pickaway County Board of Elections. *See* List of Observers for 11/7/06 General Election. These lists do not comply with Ohio R.C. 3505.21, Form 219, nor the earlier memorandum circulated to the County Boards of Elections. *See* Attached Memorandum dated October 26, 2006 by Judy Grady, Director of Elections. In Advisory 2006-09 (November 3, 2006), entitled "Clarification of Advisory 2006-08," the Defendant specified that amendment of the list was possible, but that the "*addition of new observers* (meaning additions to the total number of observers)" was prohibited (emphasis in original). Because it was common practice to repeat several names at specific precincts in the initial list, this clarifying advisory has the effect of limiting the amendments some Democratic and Independent County Parties can make to their observers' list, thus limiting the number of observers they can appoint.

Given that the deadline for filing the amended observers' list is Monday, November 6, 2006 at 4 p.m., the Defendant has effectively confused and prevented members of the Democratic and Independent Parties from serving as observers. More significantly, this advisory and clarification has the effect of permitting Republican Party observers at the polls, which would not be allowable if Ohio R.C. § 3505.21 was

enforced in respect to the initial Ohio Republican Party filing of appointment of observers.  This advisory suggests unconstitutional collusion or coordination between the Defendant and the Ohio Republican Party.  The collusion or coordination on the filings for the appointment of observers supports the Plaintiffs' claims of a current and ongoing conspiracy and recurring pattern of election manipulation by the Defendant.  *See also* attached exhibits, October 2004 Memorandum issued by the Secretary of State's Office on Challenger and Witness Guidelines; initial and amended observers' lists filed by both Republican and Democratic Parties in Athens County Boards of Elections for November 2, 2004; and initial and amended observers' list filed by the Athens County Democratic Party for the November 7, 2006 election.  This unconstitutional collusion and ongoing conspiracy between the Defendant and the Ohio Republican Party is also supported by the affidavit of Samuel Gresham, which declares that Common Cause/Ohio has requested the U.S. Elections Commission to conduct an audit based on, among other actions, the Defendant's disbursement of  "a significant amount of HAVA funds to a number of large Republican contributors as he has simultaneously campaigned fro governor." Declaration of Samuel Gresham, attached to initial memorandum.

In addition, Courts have imposed a duty on parties having grievances based on election laws to bring their complaints forward for pre-election adjudication when possible. They have reasoned that failure to require pre-election adjudication would "permit, if not encourage, parties who could raise a claim 'to lay by and gamble upon receiving a favorable decision of the electorate' and then, upon losing, seek to undo the ballot results in a court action." *Hendon v. North Carolina State Board of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (citing *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973).

*Accord Chinese for Affirmative Action v. Leguennec*, 580 F.2d 1006, 1008 (9th Cir. 1978); *Hart v. King*, 470 F. Supp. 1195, 1197-98 (D. Hawaii 1979)). In the instant case, not only is the requested equitable relief clearly necessary to prevent immediate and irreparable injury, loss, or damage, but also granting the relief prior to the election alleviates post-election challenges to the ballot results. Given the history of the electoral process in Ohio under the Defendant's tenure as Secretary of State, the requested equitable relief serves the interests of the state in the management of its elections, and imposing such relief immediately will only lighten the impeding burden upon the state in administering this election under the circumstances created by the Defendant's actions. Unlike *Purcell v. Arizona*, 549 U.S. __, 2006 Lexis 8000 (Oct. 20, 2006), the relief requested does not undercut clear guidance on statutory identification requirements. In addition, unlike the facts presented in *Purcell v. Arizona*, the requested relief is premised on historical fact, not speculation. (Stewart, J., concurrence).

      The requested equitable relief is particularly appropriate in this case which brings claims of disenfranchisement, vote suppression, vote dilution, election fraud, and recount fraud, and specifically shows that these egregious abridgments of the right to vote were and are motivated by impermissible racial and class-based discriminatory animus. *See, e.g., Bush v. Gore*, 531 U.S. 98, 110 (2000) (per curiam) (Court ordered broad equitable relief in order to prevent future constitutional violations in recounts); *Missouri v. Jenkins*, 515 U.S. 70 (1995) (ordering remedial education, teacher training, and increased taxes for schools to remedy future effects of racial segregation in education). In addition, the relief requested in the instant case is narrower than equitable relief crafted for violations of constitutional rights that although serious, did not rise to the level of the harm in this

case, a denial of the paramount right of the franchise. *See, e.g.*, *Ohralik v. Ohio State Bar Assoc.*, 436 U.S. 447, 464 (1978) (upholding prohibitions of attorney solicitation to prevent harm before it occurs); *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (requiring prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law" to protect right of access to courts) (citation omitted); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 192 (1963) (affirming an injunction of requiring a fiduciary to disclose to clients his own dealings in recommended securities before and after the issuance of recommendations in order to prevent securities fraud). Given the nature of the injuries presented in this case, this Court would be justified in imposing even broader equitable relief, see, e.g., *Louisiana v. United States*, 380 U.S. 145, 155-56 (1965) (upholding a reporting requirement so "that the court might be informed as to whether the old discriminatory practices really had been abandoned").

For all the above reasons and facts as well as the reasons and facts presented in the Plaintiffs' initial memorandum in support of a temporary restraining order, the Plaintiffs respectfully request that their requested equitable relief be granted.

Dated: Columbus, Ohio
       November 6, 2006

Respectfully Submitted,

By:   /S/ Clifford O. Arnebeck, Jr.
      Clifford O. Arnebeck, Jr. (0033391)
      (*arnebeck@aol.com*)
      341 South Third Street, Ste. 10
      Columbus, Ohio 43215
      Phone: (614) 224-8771
      Fax:   (614) 224-8082
      Trial Attorney for Plaintiffs

Henry W. Eckhart (0020202)
*(henryeckhart@aol.com)*
50 W. Broad St., #2117
Columbus, Ohio 43215
Phone: (614) 461-0984
Fax:　(614) 221-7401
Co-Counsel

OF COUNSEL:

Robert J. Fitrakis (0076796)
*(truth@freepress.org)*
341 S. Third St., Ste. 10
Columbus, Ohio 43215
Phone: (614) 253-2571
Fax:　(614) 224-8082

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing amended complaint was filed electronically on the 6th day of November 2006 in accordance with the Court's Electronic Filing Guidelines and upon other parties electronically or by US Mail. Notice of this filing will be sent to Larry H. James, Crabbe, Brown & James, Counsel for Defendant J. Kenneth Blackwell, Ohio Secretary of State, by operation of the Court's Electronic Filing System.

　　　　　　　　　　　　　　　　　　　/S/ Clifford O. Arnebeck, Jr.
　　　　　　　　　　　　　　　　　　　Clifford O. Arnebeck, Jr.