IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KING LINCOLN BRONZEVILLE NEIGHBORHOOD ASSOCIATION, *ET AL.*, | ) ) ) |
| PLAINTIFFS, | ) ) |
| VS. | ) ) CASE NO. 2:06-CV-745 |
| J. KENNETH BLACKWELL, *ET AL.*, | ) ) JUDGE ALGENON MARBLEY |
| DEFENDANTS. | ) ) |

MEMORANDUM CONTRA MOTION PURSUANT TO 18 U.S.C. §§ 401-401 AND 18 U.S.C. §§ 331-334 FOR CRIMINAL CONTEMPT AND SPECIAL GRAND JURY PROCEEDINGS

I. INTRODUCTION

Secretary of State Brunner has taken custody of the State's 2004 general election ballots in compliance with all previous orders from this Court. She has further provided those ballots, as public records under State law, to any individual who desires to examine them. Several of the proposed Intervenors, including Paddy Shaffer, have taken advantage of that fact and have spent considerable time, while accompanied by members of the Secretary's staff, reviewing the 2004 general election ballots.

The Secretary of State has very carefully and specifically followed this Court's orders and the Intervenors have failed to demonstrate that Secretary Brunner violated any of this Court's orders. Finally, the proposed Intervenors have not been granted intervention in this case. Thus, this Court should deny the motion to find Secretary Brunner in violation of any of this Court's previous orders.

Dockets.Justia.com

## II. FACTS

On August 31, 2006, the Plaintiffs filed the above-captioned suit against then-Secretary J. Kenneth Blackwell. The Plaintiffs sought an order from the Court to preserve all ballots from the November 2004 general election as evidence. On September 7, 2006, the court issued an order requiring that the Secretary serve each county board of election with a request to preserve all ballots from the November 2004 general election. The Court's September 11, 2006 Order affirmed that the boards of elections had a duty to preserve the 2004 general election ballots.[1] On April 6, 2007, the Court issued an agreed order that required the Secretary to prepare a directive requiring all 88 county boards of elections to transfer custody of all ballots from the 2004 Presidential election to her. The Court further ordered the 88 county boards of elections to comply with the Secretary's directive. Finally, the Court ordered Secretary Brunner to "maintain all ballots from the 2004 presidential election in a secure location pending the final resolution of this matter." 416 Order at 2.

The Secretary has been in full compliance with the Court's orders from September 7, 2006 until the present. OEJC, therefore, has no basis to support its motion that this Court find the Secretary in criminal contempt.

---

[1] Ballots are subject to a 22-month retention period. See, e.g., R.C. 3505.31 ("The board shall carefully preserve all ballots prepared and provided by it for use in an election, whether used or unused, for sixty days after the day of the election, except that, if an election includes the nomination or election of candidates for any of the offices of president, vice-present, presidential elector, member of the senate of the congresss of the United States or member of the house of representatives of the congress of the United Staets, the board shall carefully preserve all ballots prepared and provided by it for use in that election, whether used or unused, for twenty-two months after the day of an election.") Twenty-two months from the November 2, 2004 general election is September 2, 2006, a date that precedes both the court's order of September 7 and its order of September 11, 2006.

2

### III. Law and Argument

The United States Court of Appeals for the Sixth Circuit generally requires a four-part showing for criminal contempt: "(1) defendant's conduct must constitute misbehavior; (2) the misbehavior must amount to an obstruction of the administration of justice; (3) the conduct must take place in the presence of the court; and (4) the defendant must have the intent to obstruct." *See U.S. v. Rickey Martin*, 251 Fed. Appx. 979, 981 (6th Cir. 2007).

#### A. OEJC has no standing to assert criminal contempt claims against the Secretary.

OEJC has no standing in its capacity to assert criminal contempt claims against the Ohio Secretary of State because it is not a party to this action, and only a court or prosecutors may raise criminal contempt issues. Criminal contempts are "those prosecuted to preserve the power and vindicate the dignity of the courts, and to punish for disobedience of their orders . . . . [They] are punitive in their nature, and the government, the courts, and the people are interested in their prosecution." *In re Nevitt*, 117 F. 448, 458 (8th Cir. 1902); *cf. United States v. United Mine Workers* (1947), 330 U.S. 258, 302; *Gompers v. Bucks Stove and Range Co.* (1911), 221 U.S. 418, 441. Thus, this Court, not an adverse party, may institute criminal contempt proceedings upon its own motion pursuant to F.R.Cr.P. 42(b): "when a violation of its orders constitutes an affront to its dignity and warrants punishment....In light of the interests to be protected by (criminal contempt) civil contempt proceedings may be instituted only by a party seeking to enforce the court's remedy." *MacNeil v. United States*, 236 F.2d 149, 153 (1st Cir. 1956). At most, OEJC could raise civil contempt issues—only if it were a party to this matter (emphasis added). The enforcement of criminal contempt, however, is left to the

3

discretion of the Court and the prosecutors. There is absolutely no precedent that permits would-be intervenor OEJC to file a motion seeking punishment for criminal contempt. OEJC lacks a legally-recognized right to seek punishment of the Secretary for an alleged violation of the law.

**B.     There was no destruction or spoliation of the November 2004 general election ballots by the Ohio Secretary of State's Office.**

Proposed Intervenor OEJC improperly asserts that the Secretary violated the Court's April 6, 2007 order by committing spoliation, i.e., destroying ballots from the 2004 general election. Those ballots were in possession of the various local boards of elections. Secretary Brunner did not have any custody or control over the ballots. This Court's September 11 order directed the boards of elections to retain custody of the 2004 general election ballots. The Secretary of State affirmatively came to this Court and asked that this Court modify its previous orders so that she could take custody of the ballots. This Court granted the Secretary's request in April of 2007. The Secretary, prior to taking control of the 2004 general election ballots, took the affirmative step to inventory the documents which were in the possession of the county boards of elections. Any improper disposal of ballots covered by this Court's orders was simply not done at the hands of the Secretary or her employees.

**C.     OEJC fails to establish that the Secretary is a criminal contemnor.**

As this Court is aware, any party seeking to establish contempt bears a "heavy" burden. *See Perez v. Danbury Hosp.*, 347 F.3d 419, 423 (2d Cir. 2003) (district court's contempt power is "narrowly circumscribed," necessitating a more "exacting" appellate review than other discretionary decisions). OEJC falls short of establishing criminal

4

contempt on behalf of the Secretary. In fact, in its complaint, OEJC suggests that other individuals, and not the Secretary, are guilty of criminal contemptuous behavior. A criminal contempt charge differs from a civil contempt charge in that the Court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United State v. Layne*, 192 F.3d 556, 557 (6th Cir. 1999). In order for the moving party to establish contempt, "[it] must prove that the defendant willfully violated a specific, clear and unequivocal court order." *Downey v. Clauder*, 30 F.3d 681, 686 (6th Cir. 1994). "The government must prove (1) the existence of a lawful order of reasonable specificity; (2) that defendant had knowledge or notice of the order; and (3) that defendant willfully disobeyed the order. *Id.*; *United States v. Allen*, 73 F.3d 64, 67 (6th Cir. 1995).

Here, there is no evidence or suggestion whatsoever that the Secretary destroyed ballots to violate the Court's order. The September 7, 2006 order directed the Secretary to inform the boards of elections that the Court had issued the order, Similarly, in the September 11, 2006 order, the Court noted that it believed the Secretary had the authority to order boards of elections to preserve the ballots from the 2004 general election and ordered the boards to retain those ballots. In the April 6, 2007 order, the Court transferred custody of the ballots from the county boards of elections to the Secretary of State and ordered her to preserve the ballots. The Secretary immediately issued Directive 2007-07, which directed the boards to take inventory of the ballots and prepare to transfer those ballots to her. She not only preserved the ballots that were supplied to her by the boards, but once she became aware that not all of the counties had retained all of their

ballots, she informed the Court. Therefore, OECJ does not show beyond a reasonable doubt that the Secretary destroyed ballots—an action to willfully violate this Court's orders, causing the Secretary to be liable for criminal contempt under 18 U.S.C. §§ 401-401 and 18 U.S.C. §§ 331-334.

D. **A party may not request a special grand jury to investigate criminal contempt.**

OEJC erroneously requests this Court to impanel a special grand jury to investigate allegations that the Secretary committed criminal contempt. It is not necessary for a special grand jury to indict a party for criminal contempt. When a court holds a party in criminal contempt, a grand jury is not required because the Court will provide notice to the accused party. *See* F.R.Cr.P. 42.[2] Further, a court may not request a special grand jury to investigate criminal contempt because criminal contempt is not a violation of a criminal law of the United States. The United States Supreme Court does recognize criminal contempt as a crime, but not a violation of a criminal law of the United States. *See Gompers v. United States* (1914), 233 U.S. 604, 610. However, a special grand jury can be summoned to investigate criminal activity and has the authority to investigate violations of criminal laws; criminal contempt is not a violation of a

---

[2] (a) any person who commits criminal contempt may be punished for that contempt after prosecution on notice.
(1) *Notice.* The court must give the person notice in open court, in an order to show cause, or in an arrest order. The notice must:
(A) state the time and place of the trial;
(B) allow the defendant a reasonable time to prepare a defense; and
(C) state the essential facts constituting the charged criminal contempt and describe it as such.
(2) *Appointing a Prosecutor.* The court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court must appoint another attorney to prosecute the contempt.
(3) *Trial and Disposition.* A person being prosecuted for criminal contempt is entitled to a jury trial in any case in which federal law so provides and must be released or detained as Rule 46 provides. If the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents. Upon a finding or verdict of guilty, the court must impose the punishment.

criminal law of the United States.[3] Accordingly, OEJC fails to provide any allegation against the Secretary for which this Court should impanel a special grand jury.

---

[3] In addition to such other grand juries as shall be called from time to time, each district court which is located in a judicial district containing more than four million inhabitants or in which the **Attorney General, the Deputy Attorney General, the Associate Attorney General, or any designated Assistant Attorney General, certifies in writing to the chief judge of the district that in his judgment a special grand jury is necessary because of criminal activity** in the district shall order a special grand jury to be summoned at least once in each period of eighteen months unless another special grand jury is then serving. 18 USCS § 3331(a).

It shall be the duty of each such grand jury impaneled within any judicial district to **inquire into offenses against the criminal laws of the United States** alleged to have been committed within that district. Such alleged offenses may be brought to the attention of the grand jury by the court or by any attorney appearing on behalf of the United States for the presentation of evidence. Any such attorney receiving information concerning such an alleged offense from any other person shall, if requested by such other person, inform the grand jury of such alleged offense, the identity of such other person, and such attorney's action or recommendation. 18 USCS § 3332.(a).

## III. CONCLUSION

For the foregoing reasons, this Court should deny would-be intervening Plaintiff OEJC's Motion for Criminal Contempt and Impaneling a Special Grand Jury.

Respectfully submitted,

NANCY H. ROGERS
Ohio Attorney General


*/s Richard N. Coglianese*
Richard N. Coglianese (0066830)
rcoglianese@ag.state.oh.us
Trial Attorney
Damian W. Sikora (0075224)
dsikora@ag.state.oh.us
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614-466-2872

Counsel for Defendant Secretary of State
Jennifer Brunner


## CERTIFICATE OF SERVICE

This is to certify a copy of the foregoing was served upon all counsel of record by means of the Court's electronic filing system on this 18th day of July, 2008.

*/s Richard N. Coglianese*