



## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

KING LINCOLN, ET AL.                          :
                                              :
                    PLAINTIFFS,               :
                                              :
AND                                           :
                                              :          **Civil Action No. C2  06 745**
                                              :
THE OHIO ELECTION JUSTICE CAMPAIGN,           :
PADDY SHAFFER, MARLYS BARBEE,                 :          **JUDGE ALGENON**
VIRGINIA BROOKS, MARK BROWN,                  :          **MARBLEY**
BRUCE DUNCANSON, MARIAN LUPO,                 :
PETER JONES, AND TIMOTHY KETTLER              :          **MAGISTRATE**
                                              :          **JUDGE KEMP**
individually and as CLASS REPRESENTATIVES     :
under Fed.R.Civ.P. 23,                        :
                                              :
v.                                            :
                                              :
JENNIFER BRUNNER, ET AL.                      :
                                              :
                    DEFENDANTS.               :
                                              :

## INTERVENOR-PLAINTIFFS OHIO ELECTION JUSTICE CAMPAIGN AND NAMED PLAINTIFFS' SHAFFER, BARBEE, BROOKS, BROWN, DUNCANSON, LUPO, JONES, AND KETTLER REPLY TO DEFENDANT SECRETARY OF STATE BRUNNER'S MEMORANDUM IN OPPOSITION TO THEIR MOTION TO INTERVENE

### INTRODUCTION

Proposed Intervenor-Plaintiffs reply to the Defendant's Memorandum in

Opposition to their Motion to Intervene below:

### I. The Proposed Intervenor-Plaintiffs' Motion is Timely

1

Dockets.Justia.com

In determining whether an application for intervention as of right meets the timeliness requirements of Fed.R.Civ.P. 24(a), a court is directed to consider: (a) the point to which the suit has progressed; (b) the purpose for which intervention is sought; (c) the length of time preceding the application during which the applicant knew or reasonably should have known of its interest in the case; (d) prejudice to the original parties due to the failure of the applicant to apply promptly for intervention upon acquiring the knowledge of its interest; and (e) any unusual circumstances of the case. *Stupak-Thrall v. Glickman*, 226 F.3d 467, 473 (6th Cir. 2000); *Triax v. TRW, Inc.*, 724 F. 2d 1224, 1228 (6th Cir. 1984); *Michigan Ass'n for Retarded Citizens v. Smith*, 657 F. 2d 102, 105 (6th Cir. 1981). "The determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances." *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990).

The Verified Motion to Intervene asserts that no progress has been made in this suit since the filing of the amended complaint in October 2006. (Motion to Intervene, p. 8). Contrary to Defendant's assertions, the mere passage of time is "an insufficient basis for denying a motion to intervene." *United States v. Detroit International Bridge Co.*, 7 F.3d 497, 505 (6th Cir. 1993) (Merritt, C.J., concurring) (citations omitted), and "the point to which a suit has progressed" is one of the most important timeliness factors to consider.[1] The fifth stay expired on November 21, 2007; no discovery schedule has been

---

[1] See. e.g. *Stupak-Thrall v. Glickman*, 226 F.3d 467, 474 (6th Cir. 2000)(Motion to intervene untimely since filed over seven months after the complaint was filed, ten weeks after the discovery period had ended, and five weeks after all witnesses, including expert witnesses, had been identified. *Id.* at 474; Court reasoned that "timeliness is not merely determined by the time between the filing of the complaint and the motion to intervene, but rather by what steps occurred along the litigation continuum during that period of time." *Id.* at 475); *United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001) (If the litigation has "made extensive progress in the district court before the appellants moved to intervene" then this factor weighs against intervention;

2

set; no pretrial conference has been held. Needless to say, no trial date has been set, no depositions taken, and no expert reports filed. Only one potentially dispositive motion has been filed, a motion to dismiss, and, if granted intervention, the Intervenor-Plaintiffs adopt the Plaintiffs' response to that motion as if it were their own. Thus, although twenty-one months of real time has elapsed since the amended complaint was filed, in terms of litigation time, this case is still in its infancy.

The lack of progress in this case has also denied Intervenor-Plaintiffs an opportunity to assert their interests in this case at an earlier period in real time. For example, no case management order has been entered in this case, which would have provided a time deadline for joinder of other parties pursuant to Fed.R.Civ.P. 19.[2] Just as importantly, no motion has been made for certification of the class pursuant to Fed.R.Civ.P. 23 (c)(1)(A).[3] The Plaintiffs' amended complaint states that the class consists of "all voters in Ohio who were disenfranchised or intimidated in the November

---

denying intervention because "there was very little for either district judge to do when [proposed intervenor] filed its petitions for intervention" given that initial settlement conditionally approved and remedial orders issued.).

[2] The Notes of Advisory Committee on 1966 amendments to Rules [Rule 24], Subdivision (a) explain the relation between intervention and joinder: "Intervention of right is here seen to be a kind of counterpart to Rule 19(a)(2)(i) on joinder of persons needed for a just adjudication: where, upon motion of a party in an action, an absentee should be joined so that he may protect his interest which as a practical matter may be substantially impaired by the disposition of the action, he ought to have a right to intervene in the action on his own motion. *See* Louisell & Hazard, Pleading and Procedure: State and Federal 749-50 (1962). . . . The amendment provides that an applicant is entitled to intervene in an action when his position is comparable to that of a person under Rule 19(a)(2)(i), as amended, unless his interest is already adequately represented in the action by existing parties. The Rule 19(a)(2)(i) criterion imports practical considerations, and the deletion of the 'bound' language similarly frees the rule from undue preoccupation with strict considerations of *res judicata*."

[3] Fed.R.Civ.P. 23 (c)(1)(A) provides, "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."

3

2004 election and continue to be disenfranchised or intimidated" and specifically includes African-American and young voters (Amended Complaint, p. 17); the amended complaint's class certification statement raises the issue of possible certification as a Fed.R.Civ.P. 23(b)(3) class action.[4] Such certification would lead to notice to all the class members, including notice that "a class member may enter an appearance through an attorney if the member so desires." Fed.R.Civ.P. 23(c)(2)(B)(iv).

The absence of any litigation progress also highlights the importance of "the purpose for which Intervenor-Plaintiffs' seek intervention," the second element of the timeliness consideration. The Intervenor-Plaintiffs seek to protect their interests in the subject matter of this litigation, which alleges seventeen claims of constitutional and civil rights violations arising out of the behavior of state actors in the conduct of the 2004 and 2006 elections, and they further assert that this same conduct violated their rights under federal statutes that raise related claims not alleged in the amended complaint. (Motion to Intervene, pp. 2-5; see also Ex. A, Proposed Complaint)[5] These important interests are at potential risk for dismissal for failure to prosecute pursuant to Fed.R.Civ.P. 41(b), which

_____

[4] Fed.R.Civ.P. 23 (b), entitled "Types of Class Actions," provides, in part, that a class action may be maintained if Rule 23(a) is satisfied and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). The amended complaint asserts that "[b]ecause this action arises out of conduct of the Defendant state actors in relation to the statewide electoral process, the questions of law and fact common to members of the class predominate over any questions affecting only individual members" and asserts "[a] class action is superior to other available means for the fair and efficient adjudication of the instant controversy." (Amended Complaint, pps. 16-17).

[5] Although the Sixth Circuit has adopted a permissive approach to the technical requirements of Fed.R.Civ.P. 42(c) (attachment of pleading to motion to intervene), at least when the parties are on notice regarding the proposed intervenor's claims and positions, *Providence Baptist Church v. Hillandale*, 425 F.3d 309, 314-15 (6th Cir. 2005), the attached Ex. A is intended to bring intervenor-plaintiffs in full compliance with Fed.R.Civ.P. 42 and to further demonstrate their substantial interest.

4

operates as an adjudication on the merits;[6] further, the lack of progress in this case, including the failure to pursue discovery, prejudices the Intervenor-Plaintiffs' claims, who may face dismissal of their claims, in whole or part, due to the loss of evidence. Finally, although the statute of limitations is currently tolled pending certification of the class action, without notice that class certification had been denied, the Intervenor-Plaintiffs would likely miss the short window for refiling.[7] *See Linton v. Tennessee*, 973 F.2d 1311, 1319 (6th Cir. 1992) (*stare decisis* a consideration in granting motion to intervene).

The third timeliness element, "the length of time preceding the application during which the applicant knew or reasonably should have known of its interest" requires proposed intervenors to have "actual knowledge" or "reasonably should have known" of their interest in the case, specifically, "of the risk that [their] interest may be affected by the litigation, and that [their] interest may not be fully protected by the existing litigants." *Stoots v. Memphis Fire Dept.*, 679 F.2d 579, 582-83 (6th Cir. 1982) (citations omitted). Intervenor-Plaintiffs received actual knowledge of both following an in-person visit to the Southern District of Ohio's Clerk of Court's office during the first week of July 2008. The purpose of the visit was to verify, in accordance with Defendant's representation,

---

[6] Fed.R.Civ.P 41(b), entitled, "Involuntary Dismissal; Effect," provides: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule — except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 — operates as an adjudication on the merits." See, e.g., *Harmon v. CSX Trans.. Inc.*, 110 F.3d 364 (Sixth Circuit 1997) (affirming dismissal for failure to prosecute based on Plaintiff's failure to comply with discovery orders).

[7] The statute of limitations is tolled by the filing of a class action pending certification of the class, *Crown, Cork & Seal, Co.. Inc. v. Parker*, 462 U.S. 345 (1983); *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974). If class certification is denied, the two-year 42 U.S.C. § 1983 statute of limitations against the Defendant on claims arising out of behavior in connection with the November 2004 election will expire shortly thereafter.

5

that the documents relating to the destruction of evidence in this case, the federal ballots

ordered preserved by this Court's order, had been submitted to the Court. During this

visit, they also viewed the case filings through the electronic filing system available in

the clerk's office. (Ex. B, Affirmation of Paddy Shaffer) Thus, the Intervenor-Plaintiffs

moved almost immediately (July 7, 2008) for intervention following actual notice.[8]

     The one unpublished case the Defendant chooses to rely upon, *Johnson v. City of*

*Memphis*, 73 Fed. Appx. 123 (6th Cir. 2003), does not support the proposition that one

newspaper article on September 1, 2006, in combination with "their general interest in

the subject matter of this litigation," demonstrates that proposed intervenors "clearly

knew or should have known" of their interest in the present action. (Memo. in

Opposition, p. 3 & Defendant's Ex. A) In *Johnson,* the Sixth Circuit relied on three

separate newspaper articles circulated in the Memphis daily paper that specified the claim

raised in that case, employment discrimination, thus much more likely to provide

knowledge to parties with an interest, members of the Memphis police department. In

contrast, *The Columbus Dispatch* does not circulate statewide; further, the article is

focused on ballot-tampering, neither specifying that the case was filed as a class action,

the constitutional claims raised in the complaint, nor the kind of plaintiff the King-

Lincoln Neighborhood Association represents. Further, the *Johnson* court considered the

newspaper articles in the context of all the relevant circumstances in the case, which

---

[8] The affirmation by Named Plaintiff Paddy Shaffer, submitted in response to the Defendant's Memorandum Contra Criminal Contempt/Grand Jury Proceedings, as well Intervenor-Plaintiffs' statement in that Motion itself, establishes that many members of the Ohio Election Justice Campaign (OEJC) raised several election justice issues with the Ohio Attorney General, including the destruction of election records, in their December 2007 meeting, and that other election justice issues, some of which may be related to the instant case, were also brought to the attention of other state agencies. Intervenor-Plaintiffs rely on the actual knowledge standard because of the diversity of members of their organization and because general knowledge of election justice issues does not equate with litigation-specific knowledge.

included the extensive progress made in the case such as the scheduling of a trial date, identification of the witnesses, submission of expert testimony reports, taking of depositions, and a grant for partial summary judgment. Thus, in affirming the trial court's denial of intervention, the Sixth Circuit considered each timeliness factor, all of which weighed against a finding of timeliness. *Id.* at 131-34. *See Stoots,* 679 F.2d at 582-85 (evidence of "actual knowledge" or "reasonable should have known" demonstrated by several newspaper articles circulated in Memphis area on class action brought by Memphis firefighters in conjunction with TRO issued in the case to enjoin certain promotions).[9]

The fourth consideration, "(d) prejudice to the original parties due to the failure of the applicant to apply promptly for intervention upon acquiring the knowledge of its interest," also weighs in favor of a finding of timeliness. Intervenor-Plaintiffs submit they did apply promptly for intervention, but in the event this Court determines they should have filed earlier, the Defendant has not demonstrated any prejudice to the existing parties save that the "addition of ten new plaintiffs – all appearing pro se – after dispositive orders have been issued will only cause unreasonable and unnecessary delay." (Memo. in Opposition, p. 3) The proposed intervenors found no dispositive order in the docket. The Intervenor-Plaintiffs did not move to intervene to cause any delay; in fact, as explained above, the contrary is true. The issue of appearing *pro se* is discussed below under discretionary intervention.

---

[9] This is not the first time the Defendant has relied upon an unpublished case to assert a point of law that is just as squarely addressed by published opinions. With all due respect, the Intervenor-Plaintiffs request that the Defendant comply with the spirit of Sixth Circuit Rule 28(g) regarding the citation and service of an unpublished opinion, and at a minimum, begin serving such opinion its intends to rely upon to the Intervenor-Plaintiffs, who lack the State's resources and who also receive service on paper rather than through electronic filing.

The final timeliness consideration, "(e) any unusual circumstances of the case," also weighs in favor of granting intervention. They submit that the lack of progress in this litigation, especially given its age, is an unusual circumstance, especially given the fiduciary duty of the Plaintiff class to represent the class interests as well as the correspondingly higher duty of class counsel pursuant to Fed.R.Civ.P. 23(g)(4), who must fairly and adequately represent the interests of the class. *See, generally,* John C. Coffee, Jr., *Class Wars: The Dilemma of the Mass Tort Class Action,* 95 Colum. L. Rev. 1343 (October 1995).[10] Given all the relevant circumstances in this case, Proposed Intervenor-Plaintiffs submit their motion is timely.

## II. The Proposed Intervenor-Plaintiffs Are Entitled As of Right To Intervene

### 1. The Proposed Intervenor-Plaintiffs Have a Substantial Legal Interest in the Case

The Sixth Circuit has adopted "a rather expansive notion of the interest sufficient to invoke intervention of right." *Michigan State AFL-CIO v. Miller,* 103 F.3d 1240, 1245 (6th Cir. 1997); *Bradley v. Milliken,* 828 F.2d 1186, 1192 (6th Cir. 1987). "An intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an

_____

[10] "The most ethically disturbing problem with the mass tort class action may be its tendency toward 'structural collusion.' Even in the absence of bad faith, suspect settlements result in large measure because of the defendants' ability to shop for favorable settlement terms, either by contacting multiple plaintiffs' attorneys or by inducing them to compete against each other. At its worst, this process can develop into a reverse auction, with the low bidder among the plaintiffs' attorneys winning the right to settle with the defendant. Here, it is necessary to confront the comparatively new institution of the 'settlement' class action. Part III will thus consider various approaches that can prevent defendants from choosing plaintiffs' counsel. Coffee, *supra* at 1354-55.

8

existing district court suit where the plaintiff has standing." *Providence Baptist Church v. Hillandale*, 425 F.3d 309, 315 (6th Cir. 2005) (citations omitted); *Diamond v. Charles*, 476 U.S. 54, 68 (1986) (holding limited to requiring Art. III standing for Intervenor-Plaintiff on appellate review); *Harker v. Troutman*, 286 F.3d 359, 363 (6th Cir. 2002) ("Intervention is a procedural hurdle, rather than a jurisdictional requirement and as such, can be waived.")

The interests implicated in this litigation are the interests of "all Ohio voters who were disenfranchised or intimidated in the November 2004 election and continue to be disenfranchised or intimidated." (Amended Complaint, p. 17) In its Verified Motion to Intervene, the OEJC asserted that it is compromised of members, "many of which became involved in the organization through difficulty in casting a vote" (Motion to Intervene, p. 6). An "association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Sevs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Thus, a good faith reading of the motion itself does not support the Defendant's assertions that the only interest the Intervenor-Plaintiffs may have is "ideological." (Memo. In Opposition, p. 4) or that they assert interests in enforcing a statute, *Northland Family Planning Clinic, Inc. v. Cox*, 47 F.3d 323 (6th Cir. 2007).[11] Rather, the Verified Motion alleges that many of the Named Plaintiffs represent discrete associations of plaintiffs that have suffered an

---

[11] In *Northland*, a private party moved for intervention after grant of summary judgment: district court found party had no interest and adequately represented by State of Michigan, *Northland*, supra at 333-34; the Sixth Circuit affirmed that private party did not have interest to enforce a statute that did not regulate them or their activities, *Id.* at 343-346.

9

injury in fact that is concrete and particularized, that was actual with the 2004 and 2006 elections, that is fairly traceable to the conduct of the Defendants, and that will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations and citations omitted). For example, Named Plaintiff Marlys Barbee is both a member of the OEJC and chair of the Morgan County Coalition of Concerned Citizens; she herself, as well as the qualified electors of Morgan County she represents, suffered injury-in-fact from violations of election laws by the Morgan County Board of Elections in 2004 and 2006. (Verified Motion to Intervene, pp. 2-3)

        The attached Ex. A, a proposed complaint, further demonstrates proposed intervenors' substantial interest in the ultimate resolution of this case on its merits. *See also Northeast Ohio v. Blackwell*, 467 F.3d 999 (6th Cir. 2006) (reaffirming associational standing); *Meek v. Metropolitan Dade County*, 985 F.2d 1471 (11th Cir. 1993) (holding that voters and organizations were entitled to intervene in action by African-American and Latino citizens against the county for violation of Voting Rights Act), cited with approval by *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999). As noted by the *Grutter* court, "Even if it could be said that the question raised is a close one, close cases should be resolved in favor of recognizing an interest under Rule 24(a)." *Id.* at 399 (internal quotations and citations omitted).

### 2. The Intervenors' Interests Will Be Impaired if Not Permitted to Intervene

"As a general rule, a person cannot be deprived of his or her legal rights in a proceeding to which such person is neither a party nor summoned to appear in the legal proceeding. The need to settle claims among a disparate group of affected persons

10

militates in favor of intervention." *Jansen,* supra at 339, citing *Martin v. Wilks,* 490 U.S. 755 (1989). Given the Intervenor-Plaintiffs' substantial interest in this case, as well as the divergence in interests between them and the current Plaintiffs, as a practical matter disposition of the present action without the proposed intervenors would impair or impede their ability to protect their rights. The possibility of adverse *stare decisis* effects on Intervenor-Plaintiffs' claims alone provides proposed intervenors with sufficient interest to join the action. *Linton,* supra at 1319; *Jansen,* supra at 342.

### 3. The Parties before the Court Do Not Adequately Represent Intervenor-Plaintiffs' Interests

A presumption of adequate representation exists only when the proposed intervenor shares the same ultimate objective as a party to the suit. *United States v. Michigan,* 424 F.3d 438, 443 (6th Cir. 2005) (interests of private parties adequately represented by State of Michigan); *Meyer Goldberg, Inc. v. Goldberg,* 717 F.2d 290, 292-93 (6th Cir. 1983) (interests of stockholders and creditors protected by bankruptcy trustee). To determine whether the same ultimate objective exists, the underlying claims and prayer for relief must be examined. *Michigan,* supra at 444. Although several of the claims raised by Intervenor-Plaintiffs are identical to claims raised by the Plaintiffs, they also allege claims arising under federal statutes protecting voters with disabilities and claims unique to rural voters, elderly, and third-party voters as well as claims unique to federal candidates. (Verified Motion to Intervene, p. 8) Therefore, they only need show that "there is a potential for inadequate representation." *Grutter,* supra at 400. As currently configured, the plaintiffs in the instant case do not represent voters with

11

disabilities, elderly voters, rural voters, third-party voters or federal candidates, all of which would arguably be necessary for the resolution of this case on its merits. Because the interests of these voters may conflict with the interests of the current Plaintiffs, the potential for inadequate representation exists.

If this Court determines that the Proposed Intervenor-Plaintiffs do share the same ultimate objective, they submit that the lack of progress in this case rebuts the presumption of adequate representation. Proposed Intervenor-Plaintiffs do not assert that they would "develop[] the factual record *differently*" (Memo. In Opposition, p. 6) (emphasis added), simply that they already bring highly-developed fact patterns that would facilitate the development of the factual record in this case. Similarly, Proposed Intervenor-Plaintiffs clearly do not disagree with the Plaintiffs' litigation strategy, for example, the decision to bring the instant action as a class action.

**III. The Proposed Intervenor-Plaintiffs Should Be Granted Permissive Intervention**

Both the Motion to Intervene and the Plaintiffs' complaint were brought under Fed.R.Civ.P. 23 as class actions. Fed.R.Civ.P. 23.2, "Actions Relating to Unincorporated Associations," provides that an action brought by or against members of an unincorporated association "may be maintained only if it appears that those parties will fairly and adequately protect the interests of the association and its members."[12]

---

[12] Fed.R.Civ.P. 23.2 provides: "This rule applies to an action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties. The action may be maintained only if it appears that those parties will fairly and adequately protect the interests of the association and its members. In conducting the action, the court may issue any appropriate orders corresponding with those in Rule 23(d), and the procedure for settlement, voluntary dismissal, or compromise must correspond with the procedure in Rule 23(e)."

Defendant has not asserted that the Named Plaintiffs would not fairly and adequately protect the interests of the association and its members because they proceed *pro se*, but rather that in maintaining this action, they are engaged in the unauthorized practice of law. However, an unincorporated association, the OEJC, may contract, sue and be sued, O.R.C. § 1745.01 (2008).[13] Because class certification would then require the appointment of class counsel, Fed.R.Civ.P. 23(g)(1),[14] this Court could also permit discretionary intervention for limited purposes such as the filing of appropriate motions prior to certification of the class and the certification motion itself. *See, e.g., Goldberg, Inc. v. Fisher Foods, Inc.*, 823 F.2d 159, 164 (6th Cir. 1987) (condoning the practice of intervention solely for discovery purposes). Further, Fed.R.Civ.P. 23(g)(3) provides that the "court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."

If permitted to intervene, the Intervenor-Plaintiffs would be under a duty to move to certify the class as expeditiously as possible, which, rather than multiply filings, would consolidate them under an orderly process and specifically authorize the Court to issue orders that "prevent undue repetition or complication in presenting evidence or

---

[13] O.R.C. § 1745.01 provides: "Any unincorporated association may contract or sue in behalf of those who are members and, in its own behalf, be sued as an entity under the name by which it is commonly known and called."

[14] Fed.R.Civ.P. 23(g)(1), "Appointing Class Counsel, " provides: "Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court: (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class; (C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs; (D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and (E) may make further orders in connection with the appointment."

argument" Fed.R.Civ.P. 23(d)(1)(A). Even if the class were not certified, the entry of a case management order would prevent the "duplicative legal theories and filings" the Defendant fears. (Memo. In Opposition, p.7) Contrary to Defendant's assertions throughout the Opposition Memorandum, there are nine plaintiffs in the Motion to Intervene, not ten, and further, the nine plaintiffs brought their motion as one collective action; Proposed Intervenor-Plaintiffs are not filing nine individual papers as *pro se* litigants.[15] The Intervenor-Plaintiffs' status as *pro se* litigants does not, therefore, present an impediment to intervention, and granting permissive intervention would only work to facilitate the adjudication of the rights of the original parties and "promote the convenient and prompt disposition of all claims in one litigation." *City of Cleveland v. Cities Serv. Oil Co.*, 47 F.R.D. 543, 546 (N.D. Ohio 1969)

## CONCLUSION

For the reasons stated above and in their initial Motion to Intervene, Proposed Intervenor-Plaintiffs respectfully request that their Motion to Intervene be granted.

---

[15] Since Intervenor-Plaintiffs are putative members of the instant class, the proposed claims are not "stale and futile" (Memo in Opposition, p. 7). *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) (holding that where class action status was denied solely because of the purported class representative's failure to demonstrate that joinder of all members was impracticable, the commencement of the original class suit tolled the running of the statute for all purported members of the class who made timely motions to intervene after the court denied class action status).

14

Dated: August 8, 2008

Respectfully submitted,

Paddy Shaffer

Paddy Shaffer, Pro Se
2408 Sonnington Drive
Dublin, Ohio 43016
(614) 266-5283
paddy@columbus.rr.com

Dated: August 6, 2008

Respectfully submitted,

Marlys Barbee, *Pro Se*
8137 W. Sharps Ridge Road
McConnelsville, OH 43756
740-962-2741
mjbarbee@emypeople.net

Dated: August **6**, 2008

Respectfully submitted

*Virginia Brooks*, Pro Se

Virginia Brooks, Pro Se
1196 Twp. Rd. 2116
Ashland, Ohio 44805
419-368-6074
vareforms1@bright.net

Dated: August _5_, 2008

Respectfully submitted,

Mark P Brown

Mark Brown, *Pro Se*
83 Hanford Street
Columbus, Ohio 43206
614-449-1989

Dated: August 5, 2008

Respectfully submitted,

Bruce Duncanson, *Pro Se*
947 E. Weber Road
Columbus, Ohio 43211
bruce@redpeacecross.com
614-747-4533

Dated: August 8, 2008

Respectfully submitted,

Marian Lupo

Marian Lupo, *Pro Se*
310 S. Eureka Avenue
Columbus, Ohio 43204
614-276-0948
marianlupo90@msn.com

Dated: August 6, 2008

Respectfully submitted,

Peter Jones, Ph.D., *Pro Se*
4098 Wagner Rd.
Dayton, OH 45440
937-320-9680
peter@poetics.org

Dated: August 8, 2008

Respectfully submitted,

*Timothy J Kettler*

Timothy Kettler, *Pro Se*
29674 Township Road 30
Warsaw, Ohio 43844
740-502-6453
tmkettler@aol.com