IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

KING LINCOLN BRONZEVILLE
NEIGHBORHOOD ASSOCIATION, ET AL.,

   PLAINTIFFS,

VS.

JENNIFER BRUNNER, ET AL.,

   DEFENDANTS.

CASE NO. 2:06-CV-745

JUDGE MARBLEY

MAGISTRATE JUDGE KEMP

### PLAINTIFFS' REPLY TO MOVING INTERVENORS' RESPONSE TO PLAINTIFFS' MOTION TO STRIKE

Moving intervenors have failed to deny or rebut plaintiffs' assertion that the motion to intervene failed to conform to the requirement of Civ. R. 24(c) that: "The motion must . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought," nor the assertion that moving intervenors' deviation from this rule was intentional.

If, as it appears from the circumstances, this deviation occurred with professional legal advice and was timed to enhance the news value of the moving intervenors' press release concerning their motion to convene a grand jury, then denial of the motion to intervene on this ground is more strongly warranted than in reported cases on the subject. See, e. g. *National Elevator Indus. International Union of*, 647 F.Supp. 976 (S.D.Tex. 04/17/1986) and *Parker-Hannifin Corp. v. Samuel Moore & Co.*, 436 F.Supp. 498 (N.D.Ohio 04/8/1977), where deviation from this rule was one of the grounds for denying a motion to intervene.

1

While moving intervenors submitted three declarations as attachments, nothing in them denies or rebuts the plaintiffs' arguments either. Furthermore, the declarations show their differences--more than a year before their motion to intervene--with plaintiffs' counsels' strategy in this case. Plaintiffs wanted to settle the case with the new Secretary of State on terms that would shift to the state the responsibility for further litigation against those engaged in election fraud.

The only purpose to be served now, by allowing this untimely intervention, would be block the settlement. As moving intervenors have stated in support of their motion, they want to treat this suit as "in its infancy," rather than, as the Secretary of State and plaintiffs see it, near its end.

Ms. Shaffer's declaration

Moving intervenors had a good public relations strategy and a sound companion fund-raising strategy in place. Their release was picked up on Yahoo.com, one of the leading national Internet media entities at: http://news.yahoo.com/s/prweb/20080711/bs_prweb/prweb1092204;_ylt=AljYOBmObuR_og9MIv_gojs51sIF.

Ms. Lupo's declaration

The differences between plaintiffs' counsel and Ms. Lupo over legal strategy in this case arose during her assistance to them in a paralegal capacity in January 2007. Ms. Lupo's interest in applying her legal knowledge and skill in this case is not a sufficient basis to give her standing to be a party. Nor is a background and interest in protecting the disabled.

Her differences with plaintiffs' counsel arose in early 2007–more than a year and a half before her application to intervene as a plaintiff in this case.

Her affidavit clearly sets forth her aggressiveness and her disagreement with, and skepticism toward, plaintiffs' counsel in early 2007 (to the point of forgetting that she was paid for her work as a paralegal for them in Lupo affidavit paragraph 13 and Declaration of Arnebeck paragraph 4). This rebuts the notion that she was relying upon plaintiffs' counsel to protect her personal interest in this litigation between then and July 2008, when she moved for leave to intervene.

Inasmuch as Ms. Lupo suggests unspecified "misrepresentations" by plaintiffs' counsel, the declaration of plaintiffs' co-counsel Robert Fitrakis, confirming (Declaration of Robert Fitrakis, paragraph 7) that he did not authorize Ms. Lupo's electronic filing of a proposed response to the Secretary of State motion to dismiss, is attached hereto.

<u>Mr. Kettler's declaration</u>

Plaintiffs and their counsel appreciate the texture and vibrance that citizen candidates and third parties bring to the political process. But for the Green and Libertarian party presidential candidates' demand for a recount of the presidential votes in the Ohio 2004 election, there would have been no recount nor any of the further evidence which that recount provided of the fraud in that election. However, John Kerry, the Democratic Party, and the high-performance demographic groups that vote Democratic – African-Americans and liberal college voters were the target of the conspiracy alleged in this complaint– not third-party grassroots candidates for

political office. Indeed in the 2004 election Republican Party operatives were promoting petitions to get Ralph Nader's name on the ballot in Ohio. Furthermore, as in Florida 2000 where independent candidate Pat Buchanan got unexplainable numbers of reported votes in heavily Democratic areas, there were widely reported unexplained large numbers of votes for independent Presidential candidates in Democratic precinct in Ohio 2004.

Themes common to all of the declarations

All the declarations describe the efforts of the moving intervenors to get public officials to undertake an official criminal investigation of the evidence of fraud in the 2004 Ohio presidential election. Their later filed a motion to convene a grand jury focuses exclusively upon issues raised by the substantial omissions and indications of intentional destruction of 2004 ballots.

Dr. Richard Hayes Phillips' article "Shreds of Evidence" was posted on the Moritz Election Law Institute website. Plaintiffs' counsel formally submitted that article in digital form, as part of Phillips' book, *Witness to a Crime*, to the office of the Ohio Attorney General, Special Prosecutions, well in advance of the publication of this book in March 2008.

Since their initial meeting with senior officials of the Attorney General's office, plaintiffs counsel have been seeking to enlist the resources of that office, as well as the investigative resources of the US House Judiciary Committee, to launch a full scale investigation, not only of the destruction of evidence – but also the underlying voter suppression and vote tampering.

Plaintiffs moved for relief from the stay of this case to resume limited discovery for the purpose of more narrowly focusing the targets for criminal prosecution, prompted by new resources and information that became available to the plaintiffs, and the request from the Attorney General's office be more specific as to the target.

The Ohio Secretary of State affirmed on August 15, 2008, in response to a question from the undersigned, that she would investigate any evidence of plans for fraudulent activity in the 2008 election, which would include evidence that criminals are involved in positions of trust in this election. See attached Arnebeck Declaration, paragraphs 1-2.

Since November 3, 2004, plaintiffs' counsel Fitrakis and Arnebeck have pursued: 1) election contests before the Ohio Supreme Court, 2) a motion to intervene in Ohio Democratic Party v. Blackwell before this court and 3) this case. The plaintiffs have been involved, based upon the direct harm to their members and families as African-Americans and college voters. Plaintiffs and their counsel are featured in books, documentaries, public presentations, ongoing press conferences, and media interviews.

Plaintiff Harvey Wasserman brought this subject to the attention of his friend Robert Kennedy, Jr. Co-counsel Robert Fitrakis fact checked the article Kennedy prepared for publication in the Rolling Stone Magazine. Plaintiffs' expert Richard Hayes Phillips assisting with the analysis contained in the article. Kennedy's article is perhaps the most persuasive, well documented and graphically presented explanations of the full scope of the theft of the 2004 presidential election.

Kennedy is not a professional politician. Kennedy's reputation as a successful environmental litigator makes him the farthest thing from a "conspiracy theorist." The primary expert he consulted in regard to the seriousness of this matter was Lou Harris, who had been the pollster for his uncle John F. Kennedy and his father Robert F. Kennedy. As reflected in his article "Was the 2004 Election Stolen?" Posted Jun 01, 2006, Kennedy stated:

> Indeed, the extent of the GOP's effort to rig the vote shocked even the most experienced observers of American elections. "Ohio was as dirty an election as America has ever seen," Lou Harris, the father of modern political polling, told me. "You look at the turnout and votes in individual precincts, compared to the historic patterns in those counties, and you can tell where the discrepancies are. They stand out like a sore thumb."

Wherefore, plaintiffs request that the motion to intervene be stricken, or, in the alternative be denied as failing to meet any of the established legal criteria for intervention by right or with permission.

    Respectfully submitted,
    /s/Clifford O. Arnebeck, Jr.
    Clifford O. Arnebeck Jr. (0033391)
    Trial Attorney
    arnebeck@aol.com
    Robert J. Fitrakis (0076796)
    truth@freepress.org
    1000 East Main Street, Suite 102
    Columbus, Ohio 43215
    614-224-8771

    Henry W. Eckhart (0020202)
    henryeckhart@aol.com
    50 West Broad Street, Suite 2117
    Columbus, Ohio 43215
    614-461-0984
    Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

      This is to certify a copy of the foregoing was served upon counsel of record by means of the Court's electronic filing system, and upon the *pro se* moving intervenors by ordinary mail on this 8th day of September 2008.

                                          */s/ Clifford O. Arnebeck, Jr.*