```
                   IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF OHIO
                              EASTERN DIVISION
```

King Lincoln Bronzeville        :
Neighborhood Association,
et al.,                         :

        Plaintiffs,              :

   v.                            :    Case No.  2:06-cv-0745

Kenneth Blackwell, et al.,       :    JUDGE MARBLEY

        Defendants.              :

                            OPINION AND ORDER

     On July 7, 2008, the Ohio Election Justice Campaign, described as "an unincorporated statewide association of qualified electors dedicated to election justice issues," filed a motion to intervene as a third-party plaintiff in this action pursuant to Fed. R. Civ. P. 24(a)(2) and (b)(1)(B).  Also seeking to intervene as third-party plaintiffs, either as of right or permissively, are Paddy Shaffer, Marlys Barbee, Virginia Brooks, Mark Brown, Bruce Duncanson, Peter Jones, Marian Lupo, and Timothy Kettler, individuals allegedly possessing "uniquely relevant interests in the subject matter of this action."  On the same day, the proposed intervenors sought to initiate criminal contempt proceedings against various county boards of election and to impanel a special grand jury.  On September 25, 2008, they filed a motion for an expedited conference to address an alleged fraud upon the Court.  All of their motions were filed pro se.

     King Lincoln Bronzeville Neighborhood Association, Ohio Voter Rights Alliance for Democracy, League of Young Voters/Columbus, Rainbow Push Coalition, Columbus Coalition for the Homeless, Willis Brown, Paul Gregory, Miles Curtis, Mathew Segal, Harvey Wasserman, and Gloria Kilgore, the plaintiffs in

this action, oppose the requested intervention and have moved to strike the motion to intervene because it was not accompanied by a pleading setting forth the claim or defense for which intervention is sought.  See Fed. R. Civ. P. 24(c).  The plaintiffs also have moved to strike the proposed intervenors' motions to initiate criminal contempt proceedings and for an expedited conference.  In addition, defendant Secretary of State Jennifer Brunner filed memoranda in opposition both to the motion to intervene and the motion to initiate criminal contempt proceedings.

> The motion to intervene (#36), the motion to initiate criminal contempt proceedings (#37), the motion for an expedited conference (#70) and the motions to strike (##43, 73) are fully briefed and ripe for decision.  For the following reasons, the motion to intervene will be denied and the motions to strike will be granted in part and denied in part.  The motions to initiate criminal contempt proceedings and for an expedited conference will be stricken.  The motion to intervene will not be stricken pursuant to Fed. R. Civ. P. 24(c) because the would-be intervenors have since submitted a proposed complaint.  See Exhibit A to Intervenor-Plaintiffs' Reply to Defendant's Memorandum in Opposition to Motion to Intervene (#44).

I.

> Rule 24 of the Federal Rules of Civil Procedure was amended effective December 1, 2007 as part of the general restyling of the Civil Rules.  Intervention of right is governed by Fed. R. Civ. P. 24(a) which, as amended, provides, in pertinent part,

> > On timely motion, the court must permit anyone to intervene who: ... (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the

>     movant's ability to protect its
>     interest, unless existing parties
>     adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

The Sixth Circuit applies a four-part test to Fed. R. Civ. P. 24(a) motions. This test requires the moving party to establish (1) that the motion was filed timely, (2) that a substantial legal interest is involved, (3) that an interest will be impaired without intervention, and (4) inadequate representation by the current parties. <u>Michigan State AFL-CIO v. Miller</u>, 103 F.3d 1240, 1245 (6th Cir. 1997)(citing <u>Cuyahoga Valley Ry. Co. v. Tracy</u>, 6 F.3d 389, 395 (6th Cir. 1993)).

In determining whether a motion to intervene is timely, a court must consider all relevant circumstances, including:

>     (1) the point to which the suit has pro-
>     gressed; (2) the purpose for which the
>     intervention is sought; (3) the length
>     of time preceding the application during
>     which the proposed intervenors knew or
>     reasonably should have known of their
>     interest in the case; (4) the prejudice
>     to the original parties due to the proposed
>     intervenors' failure to promptly intervene
>     after they knew or reasonably should have
>     known of their interest in the case; and
>     (5) the existence of unusual circumstances
>     militating against or in favor of inter-
>     vention.

<u>Stupak-Thrall v. Glickman</u>, 226 F.3d 467, 472 (6th Cir. 2000).

This case was commenced nearly two years before the proposed intervenors filed their motion. Despite this passage of time, they argue that intervention is timely because no case management order has ever been entered, little discovery has taken place, and the matter has been stayed for much of the time it has remained pending. This argument ignores the enormous change in the Ohio electoral landscape that occurred less than three months after the original complaint was filed and less than a month

3

after the filing of the amended complaint.  The principle defendant, J. Kenneth Blackwell, then Ohio Secretary of State, was defeated in his bid to become governor in the 2006 general election.  Blackwell, a Republican, was succeeded as secretary of state in this election by defendant Brunner, the Democratic candidate.  Under Ohio law, the Secretary of State is the chief election officer of the state and is responsible for the conduct of elections.  See Ohio Rev. Code §§3501.04 and 3501.05.

The proposed intervenors' statements concerning the alleged lack of progress in this case are not borne out by the record either before or after the 2006 election.  Only days after this case was filed, Judge Marbley ordered the boards of elections for each of the 88 counties in Ohio to preserve all ballots from the 2004 Presidential election.  Ironically, it is the alleged violation of this order that forms the basis for the proposed intervenors' motion for criminal contempt and to impanel a special grand jury.  In the days immediately preceding the 2006 general election, the plaintiffs sought injunctive relief to prohibit enforcement of Ohio's voter ID statute and to consolidate this case with another case seeking similar relief. Plaintiffs also sought a temporary restraining order requiring back-up paper ballots at all polling places and a verified paper trail for electronic voting.  Following defendant Brunner's ascendancy to Secretary of State, the parties jointly requested and obtained a series of stays of proceedings to allow them to explore settlement options whereby plaintiffs' objectives might be achieved without the need for further litigation.  The stay was lifted at the parties' request so that an agreed order could be entered on April 3, 2008, requiring transfer of the ballots from the 2004 Presidential election from the county boards of election to the custody of the Secretary of State.  More recently, the Magistrate Judge entered an agreed order lifting

the stay to permit the plaintiffs to take the deposition of Michael Connell and any other witnesses whose testimony, in the parties' judgment, would be warranted in light of Mr. Connell's testimony.  Mr. Connell's deposition took place on November 3, 2008.  These developments, in the Court's view, weigh against intervention at this late date.

Although the proposed intervenors contend their purpose is to protect their interests in the subject matter of this litigation, their actions tell a different story.  The fact that they immediately filed a motion to initiate criminal contempt proceedings and to impanel a special grand jury without waiting for a ruling on their motion to intervene, and then issued a press release underscoring their actions, reveals a singular motive on their part to publicly discredit the results of the 2004 Presidential election in Ohio and to punish those they deem responsible.  Their subsequent motion for an expedited conference to address alleged fraud on the Court by both plaintiffs' and defendants' counsel further indicates a desire not simply to protect their legitimate electoral interests, but to pursue objectives which, although contemplated by plaintiffs' complaint, have become secondary to the goal of enhancing the reforms currently being undertaken by defendant Brunner.  Furthermore, the Court gives no credence to the purpose stated by the proposed intervenors in their supporting memoranda.  Contrary to their assertion, there is no reason to believe that, without their intervention, this case might be dismissed for want of prosecution, with such a dismissal operating as an adjudication on the merits.

The would-be intervenors have been aware of this lawsuit from the outset and were certainly aware of the changes in the political landscape resulting from the 2006 Ohio general election.  Nevertheless, they claim a lack of knowledge that

their interests might be affected by this litigation until July 2008, when they allegedly discovered that some of the ballots ordered preserved by this Court had been destroyed.  It is difficult for the Court to understand how this destruction of ballots would cause the interests of the proposed intervenors to diverge from those of the plaintiffs.  The plaintiffs clearly did everything in their power to preserve the ballots.  Once the ballots were destroyed, there was no bringing them back.  The proposed intervenors' apparent belief that the plaintiffs will not pursue the criminal punishment of those responsible for the destruction with the same zeal they would is of little consequence since neither the plaintiffs nor the proposed intervenors have a cognizable interest in the prosecution or nonprosecution of another.  See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).  The Court thus finds that the proposed intervenors were less than diligent in protecting their interests.

While the proposed intervenors argue in conclusory fashion that their intervention would not prejudice any of the existing parties, the Court believes otherwise.  Since early 2007, the plaintiffs and defendant Brunner have worked in concert to preserve the 2004 Presidential ballots and to transfer custody of the ballots from the county boards of election to the Secretary of State's office.  Defendant Brunner has also instituted broad and significant election reforms with the plaintiffs' encouragement.  At the same time, the parties have cooperated in a continued investigation into the events surrounding the 2004 Presidential election in Ohio and have conducted discovery to that end.  The intervention of the OEJC and the other would-be plaintiffs at this time would upset this delicate balance, create a more acrimonious atmosphere, and lead to further extraneous litigation.  Thus, the Court concludes that such intervention

would be prejudicial.

The Court further concludes that the lack of legal counsel representing the proposed intervenors is an unusual circumstance militating against intervention. Although the various papers filed by the proposed intervenors evidence some familiarity with the legal issues involved in this case, they also exhibit a lack of knowledge or disregard of the rules of practice governing individuals and entities that have yet to become parties. The proposed intervenors contend that once a class is certified, the requirement under Fed. R. Civ. P. 23(g)(1) for appointment of class counsel will cure any deficiency. However, there is presently no motion pending before this Court to certify a class and no assurance that any of the proposed intervenors will ever become members of any such class.

In conclusion, the Court determines that the motion to intervene is untimely. It is, therefore, unnecessary to consider the remaining factors set forth in Fed. R. Civ. P. 24(a)(2). See Johnson v. City of Memphis, 73 Fed. App'x 123, 134 (6th Cir. 2003). For these reasons, the proposed intervenors are not entitled to intervene as of right in this action. The Court must next determine whether they should be permitted to intervene under Fed. R. Civ. P. 24 (b)(1)(B).

II.

Permissive intervention is governed by Fed. R. Civ. P. 24(b). This rule, as amended, states, in relevant part:

> On timely motion the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b)(1)(B).

Timeliness and a common question of law or fact are the two requirements for permissive intervention. Purnell v. Campbell,

925 F.2d 941, 950 (6th Cir. 1991). Having found that the proposed intervenors' motion to intervene is untimely under Rule 24(a)(2), it is also untimely under Rule 24 (b)(1)(B). See S.H. v. Stickrath, 251 F.R.D. 293, 303 n.5 (S.D. Ohio 2008); S.E.C. v. Cogley, No. 98-802, 2001 WL 1842476 at *6 n.10 (S.D. Ohio Mar. 21, 2001). See also Brink v. DaLesio, 667 F.2d 420, 428 (4th Cir. 1981) (timeliness requirement of Rule 24 is less strictly enforced for intervention of right than for permissive intervention). The Court, therefore, determines that the proposed intervenors should not be permitted to intervene under Fed. R. Civ. P. 24(b)(1)(B).

III.

Based on the foregoing reasons, the motion to intervene (#36) is denied. In light of such denial, it is further ordered that the motion to initiate criminal contempt proceedings (#37) and the motion for an expedited conference (#70) are hereby stricken. See Coalition to Defend Affirmative Action v. Granholm, 240 F.R.D. 368, 377 (E.D. Mich. 2006)(motion to dismiss filed by proposed intervenor stricken because not filed by proper party to case), aff'd, 501 F.3d 775 (6th Cir. 2007), cert. denied, 129 S.Ct. 35 (2008).

    s/Algenon L. Marbley
    Algenon L. Marbley
    United States District Judge