**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**KING LINCOLN BRONZEVILLE** :
**NEIGHBORHOOD ASSOCIATION, et al.,** :
     : **Case No. 2:06-CV-00745**
    **Plaintiffs,** :
     : **JUDGE ALGENON L. MARBLEY**
    **v.** :
     : **Magistrate Judge Terence P. Kemp**
**JON HUSTED,** :
     :
    **Defendant.** :

## PLENARY OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Plaintiffs' Brief on Jurisdiction, Discovery, and Evidence Issues Identified by the Court (Doc. 118), Brief of Secretary of State Husted Addressing the Questions this Court Raised in its May 25, 2011 Order (Doc. 119), and Plaintiffs' Reply Brief on Jurisdiction, Discovery and Evidence Issues Identified by the Court (Doc. 121). These Briefs were filed in response to a May 25, 2011 Order ("May Order") in which this Court denied Plaintiffs' request to depose Karl Rove and asked the Parties to brief the following three issues:

1. Whether the Eleventh Amendment precludes subject matter jurisdiction before this Court;

2. The factual and legal bases for deposing local Chamber of Commerce ("CC") members; and

3. The evidentiary basis for the Ohio Secretary of State ("Secretary") to continue storing ballots retained from the 2004 presidential election.

(Doc. 113.)

For the reasons stated below, this Court finds: (1) the Eleventh Amendment precludes subject matter jurisdiction before this Court, and this case is now **DISMISSED** without prejudice[1]; (2) Plaintiffs have failed to provide factual or legal bases for deposing local CC members, and therefore their request to depose local CC members is **DENIED**; and (3) Plaintiffs have failed to demonstrate an evidentiary basis for the Secretary to continue storing the 2004 election ballots, and therefore their request to retain the ballots is **DENIED**.  The following pending motions in this case are now **MOOT**: (1) Motion for Expedited Hearing on Plaintiffs' Request for a Preliminary Injunction and Motion to Treat Cases as Related or in the Alternative to Consolidate Cases Under Fed. R. Civ. P. 42 and for Expedited Hearing (Doc. 12); (2) Plaintiffs' Motion for Temporary Restraining Order (Doc. 17); (3) Motion of Defendant J. Kenneth Blackwell, Secretary of the State of Ohio, to Dismiss Plaintiffs' Amended Complaint as Moot (Doc. 21); (4) Motion for Reconsideration of the Magistrate Judge's November 19, 2010, Opinion and Order and Request for an Emergency Hearing (Doc. 102); and (5) Plaintiffs' Motion for an Extension of Time within Which to File Their Reply Brief as to Issues Identified by the Court (Doc. 120).

## II. BACKGROUND

### A. Factual History

On August 31, 2006, organizations and individuals ("Plaintiffs") filed a lawsuit against former Secretary, J. Kenneth Blackwell, and John Does Nos. 1–100 ("Defendants") (Plaintiffs and Defendants collectively referred to as "Parties") alleging that Defendants "deprived and continue to deprive Ohioans of their right to vote."  (Compl. ¶ 2.)  Plaintiffs filed an Amended

---

[1] "Dismissal for lack of subject-matter jurisdiction should normally be without prejudice, since by definition the court lacks power to reach the merits of the case." *Revere v. Wilmington Fin.*, 406 F. App'x, 936, 937 (6th Cir. 2011) (citing *Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir. 2005)); *see B. & V. Distrib. Co., Inc. v. Dottore Co., LLC*, 278 F. App'x 480, 487 (6th Cir. 2008) (citing *Hyman v. City of Louisville*, 53 F. App'x 740, 742–43 (6th Cir. 2002) ("It is further true that a lack of 'standing' in this constitutional sense, like the lack of subject matter jurisdiction generally, mandates a dismissal without prejudice.").

Complaint on October 9, 2006, naming additional parties on both sides of the lawsuit.[2]  The

Amended Complaint alleges that Defendants "have conspired to deprive Plaintiffs of their right

to vote and have, in fact, deprived Plaintiffs of their right to vote by undermining the bipartisan

supervision of elections prescribed by Ohio law and avoiding any election audit."  (Am. Compl.

¶ 2.)  Specifically, Defendants did so by permitting the following during the 2004 presidential

election in Ohio: fraudulent votes to be cast for presidential candidate George W. Bush; double-

counting of absentee ballots; suppression and/or spoilage of votes in geographic areas tending to

vote for presidential candidate John Kerry and inflation of votes in geographic areas tending to

vote for Bush; and failure to follow Ohio law related to the proper recounting of votes.  Plaintiffs

claim that Defendants violated their rights under the First, Fourth, Thirteenth, Fourteenth,

Nineteenth, Twenty-Fourth, and Twenty-Sixth Amendments to the United States Constitution,

the Civil Rights Act of 1870 and 1871, the Civil Rights Act of 1964, the Voting Rights Act of

1965, and the Constitution and laws of Ohio.[3]  Plaintiffs contend that the alleged election fraud

that occurred during the 2004 presidential election in Ohio will happen again during the (then)

upcoming general election on November 7, 2006.  Plaintiffs also challenge what was Ohio House

Bill 3 to the extent that it requires voter identification for registering and casting a vote because it

---

[2] The organizational Plaintiffs include: King Lincoln Bronzeville Neighborhood Association, Ohio Voter Rights Alliance for Democracy, League of Young Voters/Columbus, Rainbow PUSH Coalition, and Columbus Coalition for the Homeless.  The individual Plaintiffs include: Willis Brown, Paul Gregory, Miles Curtiss, Matthew Segal, Harvey Wasserman, and Gloria Kilgore, "individually and as class representatives under Fed. R. Civ. P. 23."  (Doc. 10.)  The Defendants include: Blackwell, Ohio Republican Party, Robert T. Bennett, Matthey M. Damschroder, Samuel Hogsett (since terminated), Daniel Bare, and John and Jane Does 1-100.  The record indicates that summons and service was not completed with respect to any Defendant in this lawsuit.  The Secretary, however, answered the Amended Complaint on October 25, 2006.  (Doc. 13.)  Therefore, all Defendants with the exception of the Secretary are dismissed without prejudice.  Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court—on motion or its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant.").
[3] There is some discrepancy in the Amended Complaint regarding which Amendments to the United States Constitution the Defendants have allegedly violated.  Paragraph one states "Defendants' violation of their rights, privileges, and immunities secured by . . . the First, Fourth, Thirteenth, Fourteenth, Fifteenth, Nineteenth, and Twenty-Sixth Amendments to the United States Constitution."  (Am. Compl. ¶ 1.)  However, the actual claims in the Amended Complaint list violations of the First, Fourth, Thirteenth, Fourteenth, Nineteenth, Twenty-Fourth, and Twenty-Sixth Amendments to the United States Constitution.  (Id. at ¶¶ 181–222.)

selectively and discriminatorily disenfranchises, intimidates, or otherwise burdens Plaintiffs' right to vote.[4]

Plaintiffs seek declaratory and injunctive relief, as well as attorneys' fees and costs from Defendants. In particular, Plaintiffs seek declarations that: (1) the 2004 presidential election was compromised; (2) large numbers of African-Americans were deprived of the right to vote and equal protection of the law during the 2004 presidential election; (3) no audit, recount, or contest procedure was sufficient to detect, prevent, or correct the compromises to the integrity of the voting procedures after the 2004 presidential election; (4) absent a strengthening of the security of the election system, there is a reasonable basis to believe that future elections will be compromised; (5) absent a strengthening of the administration of the election system, there is a reasonable basis to believe that targeted vote suppression will continue; and (6) targeted vote suppression tactics and vote rigging during the 2004 presidential election undermined the Plaintiffs' voting rights.

Plaintiffs also seek to enjoin the Secretary, specifically Blackwell, from violating their constitutional rights by appointing a special master to supervise the next statewide general election (the November 7, 2006 election). Plaintiffs request that the Court preliminarily and permanently enjoin the Secretary from enforcing the identification requirements in House Bill 3 and that the Court appoint a special prosecutor "to prosecute criminal contempt of this injunctive relief." (Am. Compl. ¶ 238). Finally, Plaintiffs request reasonable attorneys' fees and costs.

### B. Procedural History

After Plaintiffs filed their Amended Complaint on October 9, 2006, this Court entered an order on September 7, 2006 directing the Board of Elections for each of the 88 counties to preserve ballots from the 2004 presidential election. (Doc. 6.) In January 2007, Jennifer

---

[4] House Bill 3 was signed into a law on January 31, 2006 by Governor Robert Taft.

Brunner took Blackwell's position as Secretary and on February 5, 2007, the Parties jointly moved to stay the case. A joint motion was filed by both Parties to move all of the 2004 election ballots that had been preserved to the custody of Brunner, and that motion was granted on April 6, 2007. The case was stayed initially until June 8, 2007, but additional requests to stay the case were filed thereafter, and the case remained stayed indefinitely.

Nothing further happened until July 2008, when Plaintiffs moved for relief from the stay, and Brunner opposed the motion. While the motion was pending, the Parties presented the Court with an agreed order lifting the stay "for the sole purpose of permitting the plaintiffs to take the deposition of Michael Connell and other witness whose testimony, in the judgment of these parties, may be warranted based upon the deposition of Michael Connell." (Doc. 65.) Connell moved to quash the subpoena, but the subpoena was reissued from the Northern District of Ohio and the motion to quash filed in that court was denied, and the deposition went forward.

Thereafter, nothing of major import happened until November 1, 2010, when certain non-parties filed a motion to quash a subpoena issued by Plaintiffs which commanded those non-parties to produce a "complete list of contributors, including the date and amount of their contributions, to either your fund for expenditures to influence candidate elections in 2010 or your fund for making contributions to another entity that is making expenditures to influence candidate elections in 2010." (Doc. 92.) This Court had a telephone status conference on November 2, 2010, and movants agreed on a voluntary basis to produce a list of persons or organizations who had contributed to Partnership for Ohio's Future in 2010. The remaining requested documents were not produced and this Court declined to order production, but allowed the Parties to brief the issues. On November 19, 2010, Magistrate Terence Kemp issued an order

granting the motion to quash and denying the motion to compel on these discovery disputes. (Doc. 101.) In January 2011, Jon Husted replaced Brunner as Secretary.

In May of 2011, the Parties requested a status conference. After that conference, this Court issued the May Order, which is the subject matter of this Plenary Opinion and Order. The Parties have filed their Briefs and the issues are now ripe for decision.

## III. LAW & ANALYSIS

### A. Eleventh Amendment Bar

The threshold issue is whether the Eleventh Amendment precludes this Court from exercising subject matter jurisdiction. "The existence of subject matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself." *Ogle v. Church of God*, 153 F. App'x 371, 374 (6th Cir. 2005) (citing *Lewis v. Boyd (In re Lewis)*, 398 F.3d 735, 739 (6th Cir. 2005)). This Court finds that the Eleventh Amendment bars Plaintiffs' claims.

Plaintiffs' Briefs in response to the May Order discuss the history and news coverage of this case; the alleged destruction of 2004 election ballots despite this Court's order to preserve those ballots; the alleged campaign finance fraud occurring within the local CC to determine elections in favor of Republican candidates; and an alleged Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy orchestrated by Karl Rove. The main thrust of Plaintiffs' Briefs is that election fraud is ongoing in Ohio, and that they should therefore be permitted to amend their Complaint a second time "[t]o request seek [*sic*] injunctive relief against the continued use of touchscreen electronic voting machines except for use for handicapped voters."[5]

---

[5] Plaintiffs argue that they should be permitted to amend their Complaint a second time under Rule 15(a)(2) "in the interest of justice" or to supplement their pleadings under Rule 15(d) "to set out transactions, occurrences, or events that have happened after the date they first amended their complaint." (Doc. 118); Fed. R. Civ. P 15(a)(2) & (d). There are two problems with Plaintiffs' request. First, the correct procedural method would have been for Plaintiffs to file a motion with the Court for leave to amend under Rule 15(a)(2) or to file a motion with the Court for supplemental pleading under Rule 15(d). Fed. R. Civ. P 15(a)(2) & (d). Second, "a motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice

(Doc. 118.)

The Secretary argues that the Eleventh Amendment prohibits this Court from adjudicating Plaintiffs' claim because the *Ex parte Young* exception does not apply. *See* 209 U.S. 123 (1908). Stated differently, the Secretary argues that Plaintiffs have failed to demonstrate that they are seeking any type of prospective relief. Mindful of the Parties' arguments, this Court will now examine the relevant legal landscape.

State immunity flows from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments. *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (citing *Alden v. Maine*, 527 U.S. 706, 713 (1999)). Immunity from suit in federal court applies to claims against a state by citizens of the same state as well as by citizens of another state. *Hans v. Louisiana*, 134 U.S. 1, 13 (1890). State officials also have immunity when they are sued in their official capacity for money damages. *Lapides v. Bd. of Regents*, 535 U.S. 613, 616, 620 (2002).

Nevertheless, there are a number of exceptions to a state's federal-court immunity under the Eleventh Amendment. A state may waive immunity through legislation, *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305–09 (1990), or through its conduct in litigation, *Lapides*, 535 U.S. at 616. Immunity does not extend to counties or similar municipal

---

to the opposition party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (internal citations omitted). A motion for leave to amend may be denied on grounds of futility if the court concludes that the pleading as amended could not withstand a motion to dismiss. *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005). On a motion to dismiss, the court must determine whether the complaint contains "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement asks for more than just the sheer possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The same standards apply for Rule 15(a) and Rule 15(d). *Spies v. Voinovich*, 48 F.App'x. 520, 527 (6th Cir. 2002).

This Court finds that Plaintiffs have failed to set forth persuasive evidence as to how the voting fraud, double-counting of absentee ballots, suppression and/or spoilage of votes, and inflation of votes that allegedly occurred during the 2004 presidential election in Ohio are capable of repetition in future elections. Plaintiffs' Briefs demonstrate only the "sheer possibility" that the Secretary has acted unlawfully. *Iqbal*, 129 S.Ct. at 1949. Therefore, this Court concludes leave to amend or supplement the pleadings would be futile and must be denied. *See, e.g.*, *Lebeau v. Michigan Dept. of Human Serv.*, No. 10-12624, 2011 WL 4962386, at *9 (E.D. Mich. Oct. 19, 2011) (denying leave to amend as futile where plaintiff failed to demonstrate the likelihood of future discrimination by a state official in her official capacity).

corporations. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).

When the Federal Government brings a lawsuit, Eleventh Amendment immunity does not apply.

*See United States v. Mississippi*, 380 U.S. 128, 140–41 (1965). Moreover, and of consequence

here, immunity does not apply when a lawsuit is filed against a state official for purely injunctive

relief enjoining the official from violating federal law. *Ex parte Young*, 209 U.S. at 155–56. But

retroactive relief is barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v.

Halderman*, 465 U.S. 89, 103 (1984).

      The theory behind the *Ex parte Young* decision is that "an unconstitutional enactment is

void and therefore does not impart to the officer any immunity from responsibility to the

supreme authority of the United States." *Pennhurst*, 465 U.S. at 102 (citing *Ex parte Young*, 206

U.S. at 160)). Since a state cannot authorize an unconstitutional action, an officer is "stripped of

his official or representative character and [is] subjected to the consequences of his official

conduct." *Id.* In *Pennhurst*, however, the Supreme Court held that when a plaintiff alleges a

state official has violated a *state* law, the basis for the *Ex parte Young* doctrine disappears. *Id.* at

106. The Eleventh Amendment bar applies when a plaintiff seeks to impose either prospective

or retroactive relief against a state official on the basis of a violation of state law. *Id.*

      In *League of Women Voters of Ohio v. Brunner*, this Circuit held that the *Ex parte Young*

exception to the Eleventh Amendment bar applied. 548 F.3d 463 (6th Cir. 2008). The League of

Women Voters of Ohio and individual registered voters brought a lawsuit against the Secretary

and Governor of Ohio alleging that "Ohio's voting system is so deficient as to deny or severely

burden their fundamental right to vote." *Id.* at 466. The amended complaint provided specific

instances recounting how each individual voter was severely burdened in exercising his or her

right to vote. *Id.* at 466–68. Plaintiffs alleged violations of equal protection, substantive and

procedural due process, and the Help America Vote Act of 2002. *Id.* at 466. They sought declaratory and injunctive relief requiring the Secretary and Governor to put into place a competent and fair voting system, arguing that the failures were not new, but rather systematic, and had been occurring as early as 1971. *Id.* at 466–69. Plaintiffs' amended complaint sought injunctive relief for "future statewide general elections." *Id.* at 470.

The Secretary and Governor argued that they were immune from suit under the Eleventh Amendment, but this Circuit disagreed, explaining that under *Ex parte Young*, the Eleventh Amendment bar does not apply when a state official is sued in his or her official capacity for purely injunctive relief. *Id.* at 474. The Circuit emphasized that the plaintiffs had properly characterized their prayer for relief as prospective, and that the amended complaint recounted ongoing constitutional violations since 1971 that would continue absent injunctive relief. *Id.* at 475. The Circuit also noted that the allegations presented an "exceptional case" because the Plaintiffs had alleged "that Ohio utilizes 'non-uniform rules, standards, and procedures' that result in 'massive disenfranchisement and unreasonable dilution of the vote,'" and supported those conclusions with "specific factual allegations." *Id.* at 478; *see also Nelson v. Miller*, 170 F.3d 641, 647 (6th Cir. 1999) (holding that where blind registered voters sought injunctive relief against the Michigan Secretary of State when she refused to implement methods by which they could cast votes unassisted by another person, the Eleventh Amendment was not a bar because the claims at issue only sought compliance in the future).

In *Rios v. Blackwell*, the court reached the opposite conclusion, holding plaintiffs' requested relief was barred by the Eleventh Amendment. 433 F. Supp. 2d 848, 850 (N.D. Ohio 2006). A candidate in the 2004 presidential election brought a claim against the Secretary alleging that the Secretary had issued a directive rendering meaningless any recount by ensuring

that recount results would post-date the federally-mandated safe harbor which provided that all states must certify their final tallies six days before the electoral college votes in Washington D.C. *Id.* at 849–50. The court found that although plaintiffs framed their relief in prospective terms, the Secretary's "alleged violation was not a continuing one and sovereign immunity therefore bars this cause of action." *Id.* at 850. The court explained that the alleged violation had occurred more than a year ago and was no longer ongoing. *Id.*; *see also The Cowtown Found., Inc. v. Beshear*, No. 1:09-CV-56, 2010 WL 3340831 (W.D. Ky. Aug. 20, 2010) (finding plaintiff's allegations did not fall within the doctrine of *Ex parte Young* because they were based entirely on "two past acts and not continuing conduct" and did not "reference any chronic problems that would continue absent injunctive relief unlike the plaintiffs in *League of Women*") (internal quotations and citations omitted).

This Court finds the facts here distinguishable from *League of Women Voters* and more analogous to *Rios.* Plaintiffs neglect to identify specific systematic violations of federal law capable of reoccurring in the future. *See League of Women Voters*, 548 F.3d at 475. Plaintiffs have failed to set forth convincing evidence in response to this Court's May Order demonstrating that the alleged violations that occurred in the 2004 Ohio presidential election would have occurred again in the November 2006 general election and in elections today. In *League of Women Voters*, the plaintiffs set forth examples of reoccurring problems that occurred in the 1971, 1972, 1994, 1996, 2000, and 2001 elections, including "improper purging of voters from the rolls, voting machine malfunction, miscounting of votes, polling places with too few ballots, late openings, inadequate staffing and training of poll workers, and poll worker corruption." *Id.* at 470. The Court held those allegations were sufficient to show that problems were "chronic and will continue absent injunctive relief." *Id.* at 475. Here, the allegations in Plaintiffs'

Amended Complaint are related to the 2004 election, and although this Court has given the

Plaintiffs an additional opportunity to demonstrate and explain how this alleged fraudulent

voting, double-counting of absentee ballots, and vote suppression and spoilage is ongoing today,

Plaintiffs have failed to provide any convincing evidence.  Rather, Plaintiffs' Briefs detail,

among other things, the history and news coverage of this case, alleged destruction of the 2004

election ballots, and an alleged RICO conspiracy orchestrated by Karl Rove.  This is not enough

to demonstrate Plaintiffs are truly seeking prospective relief.  Rather, Plaintiffs request only

relief barred by the Eleventh Amendment: retroactive relief.

Plaintiffs first ask for declaratory relief related to the 2004 presidential election in Ohio,

which is retroactive in nature.  (*See* Am. Compl. ¶¶ 230–35.)  For example, Plaintiffs ask for

declaratory relief that:

> [T]he integrity of the Ohio 2004 general presidential election was compromised
> by the following:
>> A. Vote suppression tactics in the administration of the election that
>> targeted demographic groups such as minorities and college students and
>> voting precincts likely to vote for the Democratic candidate; and
>> B. Vote rigging and tampering through manipulation and electronic
>> counting of paper ballots and by the programming of electronic voting
>> machines.

 (*Id.* at ¶ 230.)  Such relief is undeniably retroactive in nature.  Two of the declarations requested

by Plaintiff could arguably be construed as prospective in nature, (*Id.* at ¶¶ 233–34) ("[d]eclaring

that absent a strengthening of the securities of Ohio's election system, Plaintiffs have reasonable

basis to believe that the integrity of future Ohio elections will be compromised" and "[d]eclaring

that absent a strengthening of the administration of Ohio election system that will assure backup

mechanisms to facilitate prompt access to vote, Plaintiffs have a reasonable basis to believe that

targeted vote suppression tactics will continue to be employed"), but are not the type of

prospective relief contemplated by the *Ex parte Young* exception.  209 U.S. 155–56 (immunity

does not apply when a lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law in the future).  Moreover, taken in the context of the Amended Complaint as a whole, it becomes apparent that these requests for declaratory relief are related to the 2004 and 2006 elections, which have already come and gone.

Next, Plaintiffs seek to enjoin permanently the Secretary (specifically, Blackwell) "*prior to the next statewide election* from violating Plaintiffs' constitutional rights, including the right to vote and the right to equal protection of the laws."  (Am. Compl. ¶ 236) (emphasis added). Plaintiffs ask the Court to order Blackwell, *inter alia*, to enhance election security and audit procedures; implement a security bar code system; make available paper ballots at any time electronic voting machines cause delays; evaluate Ohio election practices and procedures to ensure fairness and uniformity; and ensure that all of this take place under the supervision of a Court-appointed special master.  The "next statewide election" Plaintiffs refer to is the Ohio November 2006 general election.  This requested relief is now moot, as the November 2006 general election is over and Blackwell is no longer in office, and Plaintiffs have failed to phrase their requested relief in terms that would have made it prospective in nature, preventing it from falling into the purview of the Eleventh Amendment bar.

Plaintiffs also ask this Court preliminarily and permanently to enjoin the Secretary (specifically, Blackwell) from enforcing certain identification requirements for registering to vote and casting a vote under what was House Bill 3.  Plaintiffs ask that this Court circulate a notice of injunction to the Board of Elections officials in all 88 counties and appoint a special prosecutor to prosecute criminal contempt of this injunctive relief.

Plaintiffs' allegations related to House Bill 3 appear at first glance as though they *could* be construed as prospective, but Plaintiffs' actions in this lawsuit confirm that the House Bill 3

allegations were related specifically to Blackwell.  First, Plaintiffs ask this Court to preliminary and permanently enjoin Blackwell, rather than the Secretary generally, from enforcing identification requirements in the Ohio Revised Code that resulted from House Bill 3.  Next, Plaintiffs agreed to stay this case, and continue the stay multiple times thereafter when Brunner entered the office of the Secretary.  In actuality, Plaintiffs are not alleging that enforcement of House Bill 3 resulted in "voter intimidation and disenfranchisement" under every Secretary in office, but only under Blackwell.  (*See* Am. Compl. ¶¶ 88–172).  Such requested relief is moot and barred by the Eleventh Amendment as it is not prospective in nature.

Notably, the Plaintiffs have failed to act diligently during the course of this litigation, and "[i]t is well established that in election-related matters, extreme diligence and promptness are required," *State ex rel.Comm. for the Referendum of Ordinance No. 3543-00 v. White*, 736 N.E.2d 873, 875 (2000).  "The party challenging the election bears the burden of demonstrating that they acted with the requisite diligence," *McClafferty v. Portage Count Bd. of Elections*, 661 F.Supp.2d 826, 839 (N.D. Ohio 2009).

Finally, Plaintiffs ask for reasonable attorneys' fees and costs.  This requested relief, too, is barred by the Eleventh Amendment because state officials have immunity when they are sued in their official capacity for money damages.  *Lapides*, 535 U.S. at 617.

There is one last point related to Eleventh Amendment immunity that this Court must address.  Plaintiffs sue the Secretary, specifically, Blackwell, in his official *and individual* capacities in the Amended Complaint.  There are no allegations in the Amended Complaint, however, indicating that Blackwell's *personal* involvement caused Plaintiffs' alleged damages.  The United States Supreme Court made clear in *Bender v. Williamsport Area School District* that pleading labels do not control when the issue is the "capacity" of the defendant:

> The first paragraph of the complaint alleged that the action was brought against the defendants "in their individual and official capacities." There is, however, nothing else in the complaint, or in the record on which the District Court's judgment was based, to support the suggestion that relief was sought against any School Board member in his or her *individual* capacity.

475 U.S. 534, 543 (1986). Furthermore, the fact that Brunner replaced Blackwell, and then Husted replaced Brunner in this lawsuit, indicates that this is "official capacity" litigation rather than "personal capacity" litigation. Fed. R. Civ. P. 25(d)(1); *see Brandon v. Holt*, 464 U.S. 469, 470–71 (1985).

## B. Deposing Local Chamber of Commerce Members

The Court will briefly address the remaining issues briefed by the Parties.

Plaintiffs argue that this Court should allow them to depose local CC members because: "Evidence of the Chamber of Commerce as a nonparty funding elections and coordinating such funding, with those who are engaged in stealing elections to bring margins within the range that can be switched, is relevant to proving that elections are not just hackable, but are also being hacked, to the detriment of the plaintiffs." (Doc. 118.) Plaintiffs indicate that their belief about local CC member involvement is based "upon independent expert research and independent expert and fact witness advice to plaintiffs' counsel." (Doc. 121.)

The Secretary argues that Plaintiffs' Amended Complaint does not allege any activity concerning illegal coordination of expenditures and therefore there is no basis for Plaintiffs to depose local CC members. Even if Plaintiffs did have a basis for deposing the local CC members, the Secretary contends, jurisdiction in this Court is not proper. If Plaintiffs believe that the local CC members are illegally coordinating campaign contributions in violation of Ohio law, the Ohio Elections Commission has exclusive jurisdiction over that claim. O.R.C. § 3517.151(A); *State ex rel. Ohio Democratic Party v. Blackwell*, 855 N.E.2d 1188, 1192

(Ohio 2006) (explaining that O.R.C. § 3517.151(A) "confers exclusive jurisdiction over complaints with respect to acts or failures to act under the specified provisions on the Ohio Elections Commission: these complaints '*shall* be filed with Ohio elections commissions'"). And to the extent Plaintiffs claim coordination is occurring in violation of federal law, the Federal Elections Commission would have exclusive jurisdiction to hear that claim. 2 U.S.C. § 437c.

This Court finds the Secretary's arguments compelling. Plaintiffs have not set forth any satisfactory factual or legal bases for deposing local CC members. Even if Plaintiffs could prove that local CC members were illegally coordinating campaign contributions to further an election fraud conspiracy taking place in Ohio, such a claim is unrelated to Plaintiffs' Amended Complaint.

### C. 2004 Election Ballot Retention

Plaintiffs argue that the 2004 election ballots should be retained because they have been informed by persons with inside knowledge that the vote counts during the 2004 presidential election in Ohio were rigged. Plaintiffs contend that this situation is analogous to the 2004 Ohio Supreme Court election:

> The exit poll discrepancy based upon unadjusted exit poll data, gathered and analyzed by consultants and expert witnesses to the plaintiffs in the citizen contest of the 2004 election before the Ohio Supreme Court, was the basis for which there was compelling reason to believe that the national popular vote and the popular vote in key electoral states, including Ohio, had been stolen.

(Doc. 118.) Plaintiffs also argue that news articles in Rolling Stone magazine and News Press have documented that the 2004 presidential election was stolen, that there needs to be a "hand count of Ohio ballots from the 2004 election," and that the "widespread destruction of parts of all of [the 2004 election] ballots" is the "clearest indication of the geographical breadth of the

irregularities in Ohio ballots in the 2004 election." (*Id.*) Finally, Plaintiffs contend that the 2004 election ballots "should be preserved for historic purposes, to enable researchers even after this litigation has been completed to conduct further investigation and analysis." (*Id.*)

The Secretary argues that the Eleventh Amendment prohibits the Parties from litigating whether the 2004 presidential election was stolen. Second, most Ohioans voted on punch card ballots in the 2004 presidential election that are no longer used and, therefore, "the punch card system used in 2004 is irrelevant and would only serve to focus on retrospective relief." (Doc. 119.) Finally, the Secretary argues that the "alleged historical interest in ballots cast in Ohio in 2004 cannot serve as a basis for ordering the [Secretary] to spent $12,000 a year to preserve ballots." (*Id.*)

The May Order directed Plaintiffs to "set forth evidence of voting irregularities in the counties whose ballots are being stored by the Secretary of State." (Doc. 113.) Plaintiffs have failed to meet this burden, and have instead set forth only general allegations of election fraud occurring during the Ohio 2004 presidential election. Furthermore, as explained above, the only type of relief sought by Plaintiffs is relief that would be barred by the Eleventh Amendment because it is retroactive in nature. *See Pennhurst*, 465 U.S. at 103, 106. This Court also finds persuasive the Secretary's argument that the punch card system is no longer used and therefore an examination of the 2004 election ballots would serve only to focus on retrospective relief. Finally, this Circuit has held that "the federal courts should not be asked to count and validate ballots and enter into the details of the administration of the election." *League of Women*, 548 F.3d at 478 (citing *Griffin v. Burns*, 570 F.2d 1065, 1079–79 (1st Cir. 1978)).

Therefore, this Court finds Plaintiffs have failed to set forth an evidentiary basis for the Secretary to continue to store the 2004 election ballots.

# IV. CONCLUSION

This Court finds: (1) the Eleventh Amendment precludes subject matter jurisdiction before this Court, and this case is now **DISMISSED** without prejudice; (2) Plaintiffs have failed to provide factual or legal bases for deposing local CC members, and therefore their request to depose local CC members is **DENIED**; and (3) Plaintiffs have failed to demonstrate an evidentiary basis for the Secretary to continue storing the 2004 election ballots, and therefore their request to retain the ballots is **DENIED**.  The following pending motions in this case are now **MOOT**: (1) Motion for Expedited Hearing on Plaintiffs' Request for a Preliminary Injunction and Motion to Treat Cases as Related or in the Alternative to Consolidate Cases Under Fed. R. Civ. P. 42 and for Expedited Hearing (Doc. 12); (2) Plaintiffs' Motion for Temporary Restraining Order (Doc. 17); (3) Motion of Defendant J. Kenneth Blackwell, Secretary of the State of Ohio, to Dismiss Plaintiffs' Amended Complaint as Moot (Doc. 21); (4) Motion for Reconsideration of the Magistrate Judge's November 19, 2010, Opinion and Order and Request for an Emergency Hearing (Doc. 102); and (5) Plaintiffs' Motion for an Extension of Time within Which to File Their Reply Brief as to Issues Identified by the Court (Doc. 120).


**IT IS SO ORDERED.**

                     **s/Algenon L. Marbley**
                     **ALGENON L. MARBLEY**
                     **United States District Court Judge**

**DATE: February 7, 2012**